## ESTATE OF ELIZABETH BECK, DECEASED.

APPEAL BY W. HENDRICKS FROM THE ORPHANS' COURT OF
SCHUYLKILL COUNTY.

Argued February 20, 1890—Decided March 3, 1890.

[To be reported.]

A legacy given expressly upon condition that it " shall not be liable to be
attached or seized for the debts " of the legatee, but shall be paid by
the executors directly to the legatee, without diminution, is protected
by that condition from attachment in the hands of the testator's execu-
tors, at the suit of the legatee's creditors.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS and MITCHELL, JJ.

No. 262 January Term 1890, Sup. Ct.; court below, num-
ber and term not given.

On June 19, 1888, F. T. Beck, executor of the will of Eliza-
beth Beck, deceased, settled the first and final account of his
administration of said estate, exhibiting a balance in his hands
for distribution. Subsequently the court appointed *Mr. Brua
C. Keefer* auditor, inter alia, to report a distribution of the
money in the accountant's hands.

The facts as found by the auditor were as follows: Eliza-
beth Beck, the testatrix, died on September 29, 1887. By her
will she bequeathed to her step-daughter, also named Elizabeth
Beck, certain chattels, and provided further:

" 3. I do hereby give and grant to my executor full power
and authority to sell my real estate at public sale, wherever
the same may be situate, on such terms as he may consider
best, and to execute deeds in fee-simple for the same."

" 5. After payment of my debts, funeral expenses and ex-
penses of settling my estate, I give, devise and bequeath to
my children, John Beck, Frederick Beck and Mary Haessler,
wife of Charles Haessler, and to my step-daughter, Elizabeth
Beck, in equal shares, the proceeds arising from the sale of my
real and personal property, . . . . and provided, further, that
the share given to my step-daughter Elizabeth Beck is in con-

Auditor's Report.

sideration of work done and her faithful attendance upon me during my illness. And whereas, said Elizabeth Beck was unfortunate in business transactions, whereby she became indebted, part of which still remains unpaid, and having no means to pay the same, now it is my will, that the above equal share in my estate, as well as the specific bequest given to her, are given to her expressly upon condition that they shall not be liable to be attached or seized for the debts or moneys which said Elizabeth Beck may owe at the time of my decease, but that the whole amount of her share shall be paid directly to said Elizabeth Beck by my executor, without diminution for the payment of her said indebtedness." . . . .

The fund in the hands of the executor for distribution was in part the proceeds of the real estate of the testatrix, sold by the executor, and in part the proceeds of personal property.

Soon after the admission to probate of the will of the testatrix, Winfield Hendricks, having obtained a judgment against Elizabeth Beck, the legatee above named, issued thereon an attachment execution, which was duly served upon the defendant and upon the executor of her step-mother, as garnishee, and under and by virtue of that attachment, Hendricks claimed that the share of the money in the hands of the executor to which his debtor, Elizabeth Beck, was entitled, should be awarded to him.

Upon the facts so found the auditor reported his conclusions of law as follows:

The question now arises, had the decedent the right to restrict the payment of this money as contained in the foregoing clause of the will; and, if so, has she availed herself of the proper means to carry said provision into effect? The auditor admits that at first he was of the opinion that the said provision was defective and could not stand; but, upon a careful consideration of the case and the examination of numerous authorities, your auditor is of opinion that said share of Elizabeth Beck is not subject to attachment.

It has long been the settled law of this state, that a father might provide for an unfortunate and improvident child through a trustee, and protect the interest from attachment or liability for debts.

—After citing and quoting from Norris v. Johnston, 5 Pa. 289; Rife v. Geyer, 59 Pa. 395; Holdship v. Patterson, 7 W. 547; Fisher v. Taylor, 2 R. 33; Ashhurst v. Given, 5 W. & S. 323; Vaux v. Parke, 7 W. & S. 19; Rick's App., 105 Pa. 535; Stover's App., 77 Pa. 282, the auditor proceeded:

From the cases cited above, it is plainly seen that the law recognizes the power of a testator to protect the interest of a principal sum from attachment or liability for the debts of the beneficiary, through a trustee. These bequests are generally placed in the hands of a trustee, so that the cestui que trust cannot touch or control the principal sum, but will have a certain annual income. It is frequently called a spendthrift's trust, the object being to provide annually for the unfortunate, the improvident, or the spendthrift; and if this sum, so placed in the hands of a trustee, and interest thereon arising, can be secured from the creditors of the cestui que trust, we see no reason why a testator cannot provide that the share given to one shall not be subject to attachment or liability for debts; otherwise, the intention of a testator is disregarded, and, as we have just seen in Rick's Appeal, the plainly expressed intention of the testator must prevail.

Elizabeth Beck, the testatrix, goes further, however, and says that the whole amount of her share shall be paid *directly* to said Elizabeth Beck "by my executor;" thus, we take it, making the executor trustee for the payment of said sum directly to Elizabeth, just as pension money is not attachable, as decided in Rozelle v. Rhodes, 116 Pa. 129, and Holmes v. Tallada, 125 Pa. 133.

Besides the provision that it shall not be subject to attachment, it is a question whether the said share or money is not wages. We have the evidence of Dr. Binckley, who testifies that Mrs. Beck told him, that Elizabeth was to be paid well for her attendance and nursing, and in the testator's last will and testament she provides that "the share given to my stepdaughter, Elizabeth Beck, is in consideration of work done and her faithful attendance upon me during my last illness." And, taking this in the consideration of work done and labor performed, it is clearly beyond reach of attachment in the hands of the executor, as decided in Scott v. Watson, 36 Pa. 342; Catlin v. Ensign, 29 Pa. 264; Penna. Coal Co. v. Costello, 33 Pa. 241.

Opinion of Court below.

—In accordance with the foregoing conclusions, the auditor awarded the share of the fund to which Elizabeth Beck was entitled directly to herself, and so recommended distribution.

Exceptions to the auditor's report, filed by the attaching creditor, having been argued, on January 6, 1890, the court, PERSHING, P. J., filed the following opinion:

There can be no doubt as to the intention of Elizabeth Beck, the testatrix, in the provision made in her will for her step-daughter, also named Elizabeth Beck. There may be doubt whether the bequest is in the best legal form for the protection of the beneficiary. The testatrix expressly declares that the share of her estate, bequeathed to her step-daughter, "is in consideration of work done and faithful attendance upon me during my illness." Hence, she provides that her bounty shall not be liable to be attached or seized for any debts of her step-daughter, but that the whole amount thereof should be paid directly to said Elizabeth Beck by the executor named in the will. In this she did no wrong to Winfield Hendricks, a creditor of her beneficiary. The testatrix was under no obligation, moral or legal, to pay, or to permit her estate to pay, the judgment on which Hendricks has issued his attachment. To allow him to succeed in taking away the money of the testatrix bequeathed to her step-daughter, would defeat the very purpose of the will.

We will not review the many cases cited to the auditor, and, on the argument, to the court. There are other decisions which have a direct application to the present controversy.

In Thackara v. Mintzer, 100 Pa. 151, the income of a son, provided for him by the will of his father, was held to be exempt in the hands of the executors, who were also trustees, from attachments to enforce the payment of alimony decreed against the beneficiary for the support of his wife in proceedings for a divorce, a mensa et thoro. The will provided that the share bequeathed to the son should not be subject to execution, attachment or sequestration, for any debts or liabilities whatever. The Supreme Court said : " The testator made no distinction between the character of the obligations which might rest on George, the beneficiary. He designed to cover all obligations, legal, equitable and moral. If we depart from

Arguments.

the clearly expressed will of the testator in this respect, we make a new will instead of enforcing the one he made."

Of course, where the will makes no provision against alienation or liability for debts, the intention of the testator may be defeated, as was decided in Girard, etc. Trust Co. v. Chambers, 46 Pa. 492. But in the case in hand, the intention of the testatrix is so plainly expressed that a refusal to carry it out would be to take from her the control of her own property; to disregard substance for form. Chief Justice GIBSON, in Commonwealth v. Duffield, 12 Pa. 279, said: "There is such flagrant injustice in applying the bounty of a testator to the benefit of those for whom it was not intended, that the mind revolts from it." That eminent jurist characterized it as a fraud upon the testator, that his property should be diverted from the objects of his bounty to other parties whom he did not have in contemplation.

A final decree having been entered dismissing the exceptions and confirming the auditor's report, the exceptant took this appeal, specifying that the court erred:

1. In overruling his exception to the award of Elizabeth Beck's share of the fund to herself.

2. In confirming the report of the auditor.

*Mr. J. W. Moyer* and *Mr. James Ryon*, for the appellant:

1. The legacy to Elizabeth Beck was an absolute and vested legacy: McClure's App., 72 Pa. 417; Reed's App., 118 Pa. 220. As it belonged to the legatee absolutely and for every purpose, why was it not attachable under § 10, act of April 13, 1843, P. L. 235? It is elementary law that an attaching creditor stands in the shoes of his debtor, and whenever the latter has a cause of action or can compel payment, the former, by means of his attachment, obtains the same right: Fessler v. Ellis, 40 Pa. 249; Myers v. Baltzer, 37 Pa. 493; Strong v. Bass, 35 Pa. 333; Coble v. Nonemaker, 78 Pa. 504; Lorenz v. King, 38 Pa. 97; Patten v. Wilson, 34 Pa. 300. Therefore, Hendricks acquired by his attachment all the rights of Elizabeth Beck, the legatee, as against the executor, and the legacy, having vested absolutely at the death of the testatrix, should have been awarded to the attaching creditor.

Arguments.

2. In all the cases cited by the auditor in support of his erroneous ruling, either the legacies were contingent, or else a properly framed trust had been created and the title to the funds or property was vested in trustees. All that those cases decide is, that when the title is vested in trustees, with a discretion as to the time and manner of payment, as the cestuis que trust cannot compel payment to themselves, neither can their attaching creditors, who claim under them, compel payment. The cases cited by the court below likewise have no application, either in their facts or their principles, to the case at bar ; and the court is in error in speaking of this money as the property of the testatrix or her estate. It is the property of the legatee, and the control of the testatrix over it ceased as soon as the title vested in the legatee. The uniform rule, in such cases, is that the legacy is attachable, and in cases of trust, where the courts have decided against attachability, they have done so, not because of a declaration against liability, but because of a discretion vested in the trustee.

3. That a fund within the absolute control of the legatee is attachable, no matter what conditions are attached to the bequest, is shown by Girard etc. Trust Co. v. Chambers, 46 Pa. 492 ; Park v. Matthews, 36 Pa. 28 ; Keyser v. Mitchell, 67 Pa. 477 ; Overman's App., 88 Pa. 282. Suppose this declaration in Mrs. Beck's will is held to protect the legacy from attachment; when does the protection cease ? The will does not say that it shall end upon payment to the legatee. The claim of the appellee presents an anomaly utterly irreconcilable with sound precedent. Again, there is no positive direction in the will to sell the real estate, and therefore no equitable conversion. If the legatee had claimed her share of the land in specie, would it have been protected by the will from sale on execution? Undoubtedly not: Kepple's App., 53 Pa. 211 ; Reifsnyder v. Hunter, 19 Pa. 41 ; Naglee's App., 33 Pa. 91 ; Brothers v. McCurdy, 36 Pa. 408 ; Jarman on Wills, 528, 538.

4. Upon the principle which forbids the disposition of property divested of its legal incidents, it is clear that no exemption from liability to the debts of the donee can be created by the author of the gift: 2 Jarman on Wills, 538 ; Hallet v. Thompson, 5 Paige 583 ; 2 Redf. on Wills, 300 ; Bank v. Davis, 21 Pick. 42. Moreover, the condition that the legacy

shall not be liable for the debts of the legatee, is void for another reason; namely, that there is no gift over or other disposition, in case of failure of the condition. In fact, from whatever quarter we approach the subject, we encounter difficulty in reaching the conclusion reached by the auditor and the court below. The very fact that, after rejecting the claim of the attaching creditor, who had by virtue of his attachment acquired the rights of the legatee and occupied her position, the auditor and court below had to close by awarding the fund to the defendant in the attachment, is an anomaly in itself and conclusive of error.

*Mr. G. H. Gerber*, for the appellee:

1. The use of the word, "but," in the last clause of that part of the will relating to this legacy, makes definite the intention of the testatrix that the exemption from attachment shall continue only while the fund is within her own control, i. e., in the hands of her executor; and, accordingly, that clause is a complete answer to the attempt of the appellant to make it appear that the testatrix meant to control the fund after it had come into the legatee's possession. If the intention were doubtful, the language would be so construed as to make the provision legal. But the decision in Phila. Trust etc. Co. v. Guillou, 100 Pa. 254, construing language similar to that of the present will, clearly shows the unsoundness of the argument that this money would be protected from execution in the hands of the legatee.

2. The real point decided by the authorities cited for the appellant, as to the effect of an attachment, is that when the right to attach exists, the attaching creditor is entitled to recover from the garnishee just what the debtor would be, and no more. But in this case, the right to attach is the question to be determined, and these authorities do not touch it. The intention of the testatrix to place this money directly in the hands of the beneficiary must be carried out unless illegal: Rick's App., 105 Pa. 535. It is not illegal, as being in conflict with the act of assembly permitting attachments: Phila. Trust etc. Co. v. Guillou, 100 Pa. 254; Overman's App., 88 Pa. 282; Prentice v. Pleasonton, 7 Cent. R. 484. Upon the point whether it is illegal, as being contrary to the policy of the law, a refer-

Arguments.

ence to the contrast between the English law on the subject and our own, will render easier the application of the Pennsylvania cases to this will.

3. In England, a trust giving the income of a fund to a beneficiary for life is considered as conferring a life-estate, subject to all the incidents of such an estate. But prohibition against alienation at any time before the property falls into possession, is enforced by the English courts if the gift is contingent: 2 Jarman on Wills, 538. In our state, neither of these rules was ever recognized; this court expressly declaring that it is not contrary to the policy of the law to permit a testator to protect a legacy from the beneficiary's creditors: Fisher v. Taylor, 2 R. 33; Vaux v. Parke, 7 W. & S. 19; Holdship v. Patterson, 7 W. 547; Ashhurst v. Given, 5 W. & S. 323; Eyrick v. Hetrick, 13 Pa. 491; Brown v. Williamson, 36 Pa. 339; Shankland's App., 47 Pa. 113; Rife v. Geyer, 59 Pa. 395. Thus, it appears that our courts are more liberal than those of England in protecting a gift of income for life, and it would seem that they ought to be as liberal in protecting a fund until it is paid over to the legatee.

4. Conceding that the legacy is vested, in the present instance, the decision in Norris v. Johnston, 5 Pa. 289, brings this case within the English doctrine that the share may be protected until it comes into the possession of the donee; for, as that decision establishes, limitations may here be imposed upon a gift, without resorting to a trust with a provision for a forfeiture. This is sustained by the other authorities: Park v. Matthews, 36 Pa. 28; Girard etc. Trust Co. v. Chambers, 46 Pa. 492; Phila. Trust etc. Co. v. Guillou, 100 Pa. 254; Overman's App., 88 Pa. 282; Thackara v. Mintzer, 100 Pa. 151; Prentice v. Pleasonton, 7 Cent. R. 484. But, suppose a trust were necessary in order to give effect to the prohibition against alienation or attachment: is not the executor a trustee, and until his duties are performed and the money paid over, is not the estate in his hands a trust estate?

5. But this court has uniformly held that the protection against attachment does not depend upon the creation of a trust, and the vesting in the trustee a discretion as to payment. In addition to the cases already cited, particular attention is directed to Stover's App., 77 Pa. 282, which clearly shows that

the testator has the right to direct the manner of payment, and that full effect will be given to his direction. What might have been the result if the legatee could have, and had, taken land instead of money, is immaterial, since it is money that she is claiming; but the will as a whole excluded her from any such choice, and confined her right to a share in the proceeds of sale. Moreover, the testimony shows that the legatee had a claim upon the estate for services, and the will declares that the legacy is given in consideration of work done. The money awarded her is therefore clearly wages, and wages are not attachable, whatever form the claim for them may assume : Penna. Coal Co. v. Costello, 33 Pa. 241; Catlin v. Ensign, 29 Pa. 264; Scott v. Watson, 36 Pa. 342.

OPINION, MR. CHIEF JUSTICE PAXSON :

Elizabeth Beck, the testator, in and by her last will and testament gave to her step-daughter, also named Elizabeth Beck, a one fourth interest in her estate, upon the following condition : " And whereas, the said Elizabeth Beck was unfortunate in business transactions, whereby she became indebted, part of which still remains unpaid, and having no means to pay the same, now it is my will that the above equal share in my estate, as well as the specific bequest given to her, are given to her expressly upon condition that they shall not be liable to be attached or seized for the debts or moneys which said Elizabeth Beck may owe at the time of my decease, but that the whole amount of her share shall be paid directly to said Elizabeth Beck by my executor, without diminution for the payment of her said indebtedness."

The share aforesaid has not yet been paid to the said legatee, for the reason that the appellant, who held a judgment against her, attached the fund in the hands of the executor. The learned court below held that the attachment would not bind the fund in the hands of the executor, and awarded it to the legatee. From this decree the attaching creditor has appealed.

No one doubts that it was competent for the testator to have placed this fund forever beyond the reach of the creditors of her legatee, by creating a trust for that purpose. This she has not done, and the question which arises is, whether she has protected the fund in its transit from the executor to the

legatee. That she had a right to do this must be conceded. Has she done so? We may dismiss from the case the learning about vested and contingent legacies. This was not, as was assumed by the learned counsel for appellant, an absolute gift of the property. It was a gift upon the express condition that, in the hands of her executor, it should not be liable to the debts of the legatee, but should " be paid directly to the said Elizabeth Beck by my executor, without diminution for the payment of her said indebtedness." The executor was thus clothed with an express trust in regard to this share.

It is true, the trust would end the moment the money was paid to the legatee, but during the transit, while the money remained in his hands, it was as much protected from creditors as if a separate trust had been created for that purpose. It was the right of the testatrix to say that her estate should not go to pay her step-daughter's creditors. She has said so as emphatically as language can express it, for the time that the money remains in the hands of her executor. Does the fact that she did not protect it further, by raising up another trustee of the fund, after it left the executor's hands, destroy the trust she did create, and nullify the positive directions of the will that it should not be attached in transit? Why shall the will of the testator be defeated in this respect? She had a right to do what she willed with her own. The creditors of her legatee had no claim upon her estate, and when she directed that the share should be paid to her step-daughter, and not to the creditors of the latter, who shall gainsay her? The creditor is not injured, and has no right to complain.

I have not discussed the authorities, because we have no case which precisely covers this; but, upon reason, and analogy to the decisions we have, this case must be affirmed.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.