# Richmond

## Edwin A. Alderman, Jr. v. Virginia Trust Company, Executor, et als.

April 26, 1943.

Record No. 2655.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

498

The opinion states the case.

*Walsh & Waddell* and *George Gordon Battle*, for the appellant.

*Robert G. Butcher*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Dr. Edwin A. Alderman, late president of the University of Virginia, died on April 29, 1931, leaving a last will and

testament dated April 14, 1931, which was probated on May 30th of the same year. The testator, after making certain bequests, not material here, gave all of the rest, residue, and remainder of his estate, real and personal, to his executor, the Virginia Trust Company, in. trust. He directed the executor, as soon as practicable, to divide the estate into two portions, one of which should consist of three-fifths of the entire residuary estate to be held in trust for the benefit of his wife, Mrs. Bessie H. Alderman, and the other two-fifths to be held in trust for the benefit of his son, Edwin A. Alderman, Jr., the trusts to be held upon the conditions set out in the following clauses of his will:

"EIGHTH. Out of the funds hereinbefore set apart in trust for my said wife, I hereby expressly charge and direct my said Executor to set up and maintain a distinct and separate trust fund of One Hundred Thousand Dollars ($100,000.00) in actual value, upon condition that the corpus thereof and income therefrom, or either of them, in the discretion of my said Executor, shall be applied by said Executor to the support and maintenance of my said wife, Bessie H. Alderman, without being subject to her liabilities or to alienation by her.

"And out of the fund hereinbefore set apart in trust for my said son, Edwin A. Alderman, Jr., I hereby further expressly charge and direct my said Executor to set up and maintain a distinct and separate trust fund for Sixty-five Thousand Dollars, ($65,000.00), in actual value, upon condition that the corpus thereof and the income therefrom, or either of them in the discretion of my said Executor, shall be applied by my said Executor to the support and maintenance of my said son, Edwin A. Alderman, Jr., without being subject to his liabilities or to alienation by him.

"These two distinct and separate trusts are created by me in accordance with provisions of Section 5157 of the Code of Virginia of 1919.

"NINTH. The aforesaid payments of income shall be made to my said son until he reaches the age of thirty-five years, and when he reaches that age my said Executor shall

turn over and deliver to him, in cash or in securities at market value, a sum equivalent to one-half of the entire value of the principal amount of the whole of his said trust fund as of that date, that is to say—one-half of the corpus of the trust fund for his support and maintenance, and one-half of any other sums my said Executor may then hold in trust for my said son. My said Executor shall, from date of such payment of principal, pay to my said son, in monthly installments, all of the net income from the residue of his said trust fund still remaining in its hands, such residue of said trust fund being then a trust for support and maintenance under the provisions of said Section 5157 of the Code of Virginia of 1919; and said monthly payments of income shall continue to be made to my said son until he reaches the age of forty years. And when my said son reaches the age of forty years, if he is able, by proof satisfactory to my said Executor, to establish the fact that he is possessed of an unencumbered estate, equal in value to two-thirds (2/3rds) of the principal sum received by him from my said estate when he attained the age of thirty-five years (whether such estate was derived from the use and the preservation of the funds which he has previously received from my said estate, or from any other source except gift, inheritance, devise, or bequest), then my said Executor shall turn over and deliver to my son all of the residue of the trust estate then held by it for him under the terms of this, my will. If my said son, at the age of forty years, is unable to show that he is possessed of such estate as is described above, then I hereby direct my said Executor to maintain the residue of my said son's trust fund then remaining in its hands intact, treating said trust fund as a trust for support and maintenance as hereinbefore set out, and continuing to pay the net income therefrom to my said son in monthly installments until my said son reaches the age of fifty years, at which time the whole of the corpus of said trust fund shall be delivered by my said Executor to my said son, Edwin A. Alderman, Jr., regard-

less of the amount or condition of my said son's estate at that time.

"Tenth. All of the corpus of the trust fund hereinbefore created for the benefit of my said wife, except the One Hundred Thousand Dollars ($100,000.00), which is to be held by my said Executor as a trust fund for her support and maintenance, I give and bequeath, upon the death of my said wife, unto such persons, and in such estates, interests, and proportions as my said wife, Bessie H. Alderman, shall, in her last will and testament in that behalf appoint.

"Eleventh. Should my said wife, Bessie H. Alderman, die, leaving our said son, Edwin A. Alderman, Jr., surviving, and under the age of forty years, then I hereby direct my said Executor to transfer from the trust fund hereinbefore created for my said wife all of the corpus of the $100,-000.00 trust fund over which my said wife has no power of appointment, together with any portion of her said trust fund over which she has power of appointment, but which power she has not exercised, adding the fund so transferred to the corpus of the trust fund then held by my said Executor for my said son, and increasing the corpus of the trust for his support and maintenance to the limit allowed by Section 5157 of the Code, and treating principal and income of the funds transferred as a part of my said son's trust fund, then in my said Executor's hands, and as such said funds shall be subject to all provisions with reference to my said son's trust fund hereinbefore or hereinafter set out, and operative upon said trust fund as to the date of such transfer and thereafter.

"If at the date of my said wife's death, our said son shall be then surviving, over the age of forty (40) years, and not in possession of the whole of the corpus of his said trust fund, under the conditions hereinbefore expressed, then upon the death of my said wife, all of my said wife's trust fund over which she has no power of appointment, or over which she has not exercised such power, shall pass to my said Executor as a part of my said son's trust fund then in my said Executor's hands, and as such said funds shall be

subject to all provisions with reference to my said son's trust fund hereinbefore or hereinafter set out, and operative upon said trust fund as of the date of such transfer and thereafter.

"If at the date of my said wife's death our said son shall be then surviving, over the age of forty (40) years, and in possession of the whole of the corpus of his said trust fund, under the conditions hereinbefore expressed, then upon the death of my said wife, all of my said wife's trust fund over which she has no power of appointment, or over which she has not exercised such power, shall pass to our said son in fee simple. .

"TWELFTH. Should our said son, Edwin A. Alderman, Jr., die before my said wife dies, leaving child or children, or the descendants of any such child or children then dead leaving descendants, surviving him, then so much of his said trust fund as may be in the hands of my said Executor at the date of my said son's death, shall immediately pass in fee simple to such child or to such children in equal portions, and to the descendants of any deceased child or children per stirpes. And upon the death of my said wife, said trust fund created for her support and maintenance, and over which she has no power of appointment, together with any portion of her said trust fund over which she has power of appointment, but which power she has not exercised, shall likewise pass in fee simple to such child or children and to the descendants of any deceased child or children per stirpes.

"THIRTEENTH. Should our said son, Edwin A. Alderman, Jr., die before my said wife dies, leaving no child or children, or descendants of such surviving him, but leaving a widow, then I direct that my said Executor shall turn over to my said son's widow, in fee simple, one-half (½) of the corpus of such trust funds as my said Executor shall be holding for my said son as of the date of his death. The residue of such trust funds, or if our said son leaves no widow, the whole of said trust funds, shall then be added by my said Executor to the trust fund hereinbefore created

for my said wife, and shall be administered as a part thereof. And upon the death of my said wife all trust funds held for her, and over which she has no power of appointment, together with any portion of her trust fund, over which she has power of appointment, but which power she has not exercised, shall pass to The Rector and Visitors of the University of Virginia, without reservation or condition of any kind.

"FOURTEENTH. I hereby direct that in the management of my said estate all payments of income, and of principal, shall be made whenever practicable, to no one other than to the Beneficiary named, and that the payments of income shall be made as nearly as possible on the first day of each and every month, and that such payments shall be equalized as nearly as possible so that the same amounts may be expected each month.  * * * "

The estate was more than sufficient to set up the restricted trusts of $100,000 and $65,000, respectively, for the wife and the son of the testator. In addition, each had a respective three-fifths and two-fifths interest in the remaining portion of the estate, set up as ordinary trusts for each beneficiary, and in funds unallocated by the executor to either form of trust. The securities in the restrictive trust for the son had the value of $78,884.62 on September 20, 1935. On the same date, the securities in the ordinary trust for Alderman, Jr., had a value of $19,632.30, and he was also entitled to a two-fifths interest in unallocated securities in the hands of the executor, with a market value of $23,668.98.

Alderman, Jr., became thirty-five years of age on May 21, 1940, and under the terms of his father's will, one-half of the restrictive trust of $65,000 and one-half of any other sums that the executor then held in trust for him became payable to him.

Edwin A. Alderman, Jr., was wayward and irresponsible as a youth and man. He is described as having been erratic, unstable, and a victim of over-indulgence in alcoholic stimulants.

In 1929, he was married to Miss Anne Cucullu. Of their union, a daughter, Anne Erwin, was born on March 24, 1932. Mrs. Anne C. Alderman obtained a divorce from him on July 18, 1934, and her infant daughter remained in her custody and control. Mrs. Anne C. Alderman thereafter married John H. Barringer on October 16, 1935, and Alderman, Jr., subsequently married Ann Boyd Jones.

It would serve no useful purpose to enter into any more detailed statement of the private life and personal conduct of Alderman, Jr., prior and subsequent to his first marriage, or his mental condition at the time of the instances hereinafter mentioned. Suffice it to say that at the insistence of his first wife, he undertook to make some provision for the maintenance and support of her and his child by entering into the following agreements and contracts.

On July 30, 1932, he wrote the following letter to the Virginia Trust Company, executor and trustee:

"As one of the beneficiaries under the will of my father, the late Edwin A. Alderman, I have received from you during the past year the sum of $330.00 per month on account of income from the trust fund created for me by the will of my said father.

"Sixty-five thousand dollars of the principal of said trust fund is set apart by the will of my said father as a specific trust for my support and maintenance. I am advised that I have no power of alienation over any part of the income derived from this $65,000.00.

"I now request you, however, to pay to my wife, Anne C. Alderman, on the first day of each and every month, beginning with Oct. 1932, all income that may be due to me from the surplus of said trust fund over and above the $65,000.00. My said wife and I having separated, this payment is being made by me for support and maintenance of my said wife, and our infant child. I desire that these payments shall continue to be made to my said wife until further notice from me to you."

On January 2, 1933, he executed the following assignment:

"For value received I, the undersigned Edwin A. Alderman, Jr., do hereby now irrevocably grant, transfer, assign and set over unto my infant daughter, Anne Erwin Alderman, all and the whole of that part of the principal or corpus of the estate and/or trust subject which by the will of my father, the late Edwin A. Alderman, will be and/or become deliverable or payable to me by the terms or provisions of the will of my said father upon my reaching thirty-five years of age; and the Virginia Trust Company, executor and/or trustee under the will of my father, as well as any successor in office or such executor and/or trustee, is hereby irrevocably ordered and directed to pay over and/or deliver absolutely unto my said infant daughter, or to her guardian, upon my reaching thirty-five years of age, the whole and all of that part of the corpus and/or principal which by any and/or all of the terms and provisions of said will will then be or become deliverable and/or payable to me.

"The aforesaid executor and/or trustee of my said father's will is now, by my order, paying to my wife, Mrs. Anne Cucullu Alderman, the incomes from a part of the aforesaid estate, and/or trust subject placed in trust for me by my said father's will (that is, the incomes from the part thereof over and above the 'spendthrift trust' subject provided or created for my benefit by said will), and I hereby, for value received, irrevocably grant, transfer, assign and set over unto said Anne Cucullu Alderman the incomes from all such part (that is, from all parts of said estate or trust subject over and above the 'spendthrift trust' subject aforesaid) until I reach thirty-five years of age; and said executor and/or trustee, as well as any successor in office of said executor and/or trustee, is hereby ordered and directed to pay, and continue to pay, to said Anne Cucullu Alderman in monthly instalments, or in as nearly monthly instalments as practicable, until I reach the age of thirty-five years, the incomes from the whole of said estate or trust subject now or hereafter held in trust for me under my said father's will over and above the incomes from the

'spendthrift trust' subject thereby provided or created for my benefit.

"Nothing herein contained or done hereunder is intended to be, or shall ever be construed or taken to be, a waiver by said Anne Cucullu Alderman of any right she may now or hereafter have by reason of our marriage, or as a condonation by her of any former alleged breach or any future breach by the undersigned Edwin A. Alderman, Jr., of our marital relations."

On January 5, 1933, he entered into a separation agreement with Mrs. Anne C. Alderman, wherein he reaffirmed and ratified the assignment of January 2, 1933. This agreement contained the following pertinent provisions:

"4. Party of the first part agrees to pay to party of the second part for her personal maintenance and support so long as she lives or until she remarries the sum of One Thousand Eight Hundred Dollars ($1,800.00) per annum, payable in equal monthly instalments upon the first day of each month, commencing with the month of January, 1933. This allowance shall not be decreased but shall be increased by an amount equal to thirty-three and one-third per cent (33-1/3%) of the amount by which the net annual income of party of the first part shall exceed the sum of Six Thousand Dollars ($6,000) per annum; provided, however, that in no event shall party of the second part be entitled to receive more than the aggregate sum of Five thousand Dollars ($5,000) per annum for her personal support and maintenance.

" * * *

"5. Party of the first part further agrees to pay to party of the second part a fixed sum of six hundred Dollars ($600.00) per annum for the education, maintenance and support of said daughter during her minority, such sum to be payable in equal instalments on the first day of each month commencing with the month of January, 1933. Party of the second part agrees that she will faithfully and prudently expend such ($    ) per annum for the welfare and support of said child.

"By an instrument in writing, dated January 2, 1933, the terms and provisions of which are hereby reaffirmed and ratified with the same force and effect as if fully set forth herein, the party of the first part has, among other things, irrevocably granted, transferred, assigned and set over unto his said infant daughter all the principal or corpus of the trust created by the last will and testament of his father, Edwin A. Alderman, deceased, which will be payable to the party of the first part by the terms of said will upon his attaining the age of thirty-five years; now if the terms and provisions of the instrument above mentioned be strictly and faithfully complied with, and pursuant thereto his said daughter receive at least $25,000, then in that event she shall be deemed sufficiently provided for and the obligation of the said party of the first part to make payments for her education, support and maintenance, as provided in this fifth paragraph, shall thereafter cease.

"6. In order to secure to the extent herein provided the payments above provided for in paragraphs 4 and 5 hereof, party of the first part agrees to and does hereby irrevocably sell, assign, transfer and convey unto party of the second part all of his right to receive the income from a certain trust under the will of his father, Edwin A. Alderman, of which the Virginia Trust Company of Richmond, Virginia, is trustee, to the extent that such income is assignable for the purposes herein stated under the provisions of the said will and the laws of the State of Virginia; it being expressly understood, however, that the amount of income so assigned hereunder shall in no event exceed the amounts herinbefore agreed to be paid by party of the first part to party of the second part in each year for her support and for the education, support and maintenance of said daughter, except as heretofore provided in the instrument dated January 2, 1933, signed by party of the first part and referred to above in paragraph 5 herein. Party of the first part hereby further agrees to execute and deliver to party of the second part and/or the Virginia Trust Company any and all further

assignments or other instruments which may be necessary to carry out effectually the provisions of this paragraph."

On May 18, 1940, he wrote the following letter to the Virginia Trust Company:

"I shall attain 35 years of age on May 21, 1940, and, as I am advised, I shall become entitled to one-half of $65,000.00 in actual value held for me under the Eighth Item of the will of my father, Dr. Edwin Anderson Alderman. The assignments of January 2, 1933, were not intended to affect this portion of the funds held for me and as I am advised are ineffective in respect to this portion which is not subject to my liabilities or to alienation by me. I shall therefore insist that one-half of the fund held under the eighth Item is properly payable to me on May 21, 1940.

"There will at the same time be payable one-half of the residue of the trust fund set apart for me as provided at the Seventh Item of my father's will. This residue it is recognized should be paid under the assignments of January 2, 1933, and January 5, 1933.

"It is my desire that my daughter, Anne Erwin Alderman, shall receive at this time $25,000.00, and that the obligation for her education, support, and maintenance as provided in the fifth paragraph of the contract of January 5th, 1933, shall cease as therein provided. I am informed that the portion of the trust fund created for me under the Seventh Item in excess of the $65,000.00 held under the provisions of the Eighth Item, amounts to about $30,000, of which one-half will be payable on May 21st. It is my purpose, therefore, to authorize you when I attain 35 years of age to pay out of the $32,500 which will be payable to me from the fund held under the Eighth Item, a sum sufficient to increase to $25,000 the amount which my daughter shall receive, so that she shall receive $25,000. The balance I shall wish paid to me."

Later, after he had become thirty-five years of age, he gave the following written direction to the Virginia Trust Company, executor and trustee:

"You will please pay to Virginia Trust Company, Guardian of Anne Erwin Alderman, infant, out of the funds now payable to me held by you in the Restricted Trust created at the 8th. and 9th. items of the will of Edwin A. Alderman, deceased, such amount as may be necessary to increase the amount received by said infant from the Ordinary Trust to $25,000.00, so that she shall take from the monies held in the trusts to which I am now entitled an aggregate of $25,000.00.

"Dated, October 29, 1941.

> "Respectfully,
> "(Signed) E. A. ALDERMAN, JR."

Reciting the essential circumstances and alleging that a controversy had arisen between the interested parties relative to the effect of the assignment of January 2, 1933, the Virginia Trust Company, executor and trustee, filed its bill on June 3, 1940, convening all proper parties and praying the court for its advice, guidance, and instructions in making distributions of the funds held in trust for Alderman, Jr., under the will of Dr. Alderman. Answers were duly filed by all of the defendants, including the infant by her guardian *ad litem*.

Alderman, Jr., admitted that he executed the assignment of January 2, 1933, and the agreement of January 5, 1933; but denied that he had either the intention or the right to make any alienation, assignment, or charge against the corpus or income of the restricted trust fund of $65,000, prior to the time he became thirty-five years of age, in view of the provisions of his father's will. He alleged that it was his intention to have the assignment and agreement relate only to funds not allocated to the restrictive trust and that, at the time of the execution of the said instruments, he was not in a mental condition to understand their purpose and effect, and prayed that they should be so reformed as not to operate upon the funds in the restricted trust. The infant submitted her interests to the court.

After hearing considerable evidence, the trial court, on March 25, 1942, held that Alderman, Jr., was legally competent to make the agreements and assignments above mentioned, and that he executed and delivered them of his own free will. It construed the assignment "as involving and designed to affect and operate upon the whole of the corpus of each of the trusts created by the will of Edwin A. Alderman for the benefit of his son, Edwin A. Alderman, Jr., which, under the terms of the ninth clause of the will would be payable and deliverable to Edwin A. Alderman, Jr., upon his attaining the age of thirty-five years on May 21, 1940; that is to say, "one-half of, (a), the corpus of the trust fund set up under Code, Section 5157, for the support and maintenance of Edwin A. Alderman, Jr., and one-half of, (b), the corpus of all other funds the executor and trustee held in trust for Edwin A. Alderman, Jr., on May 21, 1940;" and directed payment of such funds to the guardian of Anne Erwin Alderman to be held and administered as a part of her estate.

The trial court further held, "that at any and all events, in view of the assignment of January 2, 1933, and the further assignment of October 29, 1941," the infant was entitled to receive, as assignee of her father, the sum of $25,000, and ordered and directed the Virginia Trust Company, as executor and trustee, forthwith to pay unto itself, as guardian of the said infant, funds and securities to the value of $25,000, reserving for future decrees "any questions which may arise as to the adjustment of income or interest and the proper accounting or ultimate charging of the said $25,000 fund, as well as of the costs and allowances in this cause."

The evidence is sufficient to support the conclusion of the trial court that Alderman, Jr., was of sufficient mental competency to enter into the questioned agreements and that his assignments related to the corpus of the restricted funds.

. The principal question for our consideration is, whether Edwin A. Alderman, Jr., had the power before he was

thirty-five years of age, to assign or alien a portion of the restrictive trust to which he would be entitled if and when he became thirty-five years old; or stated in another way, did section 5157 of the Code of Virginia, 1942, (Michie) and the provisions of the testator's will against alienation prevent the beneficiary, Edwin A. Alderman, Jr., from making, during the period of the restricted trust, a valid assignment of a portion of the corpus of that trust?

· Spendthrift trusts were not valid in Virginia prior to the revision of our Code in 1919. Theretofore, we followed the English rule, making the equitable estate of the *cestui que trust* liable for his debts to the same extent as if he were the legal owner thereof. *Hutchinson* v. *Maxwell*, 100 Va. 169, 40 S. E. 655, 93 Am. St. Rep. 944, 57 L. R. A. 384.

Section 5157 of the Code of 1919 is the same as the present section 5157* of the Code of Virginia, 1942, (Michie). The last clause of that section, printed below in italics, was added in 1919 to section 2428 of the Code of 1887. Since its addition, for the purposes prescribed and within the specified pecuniary limitations of the amended statute, spendthrift trusts have been recognized as· valid in this State. *Dunlop* v. *Dunlop*, 144 Va. 297, 132 S. E. 351; *Thomas* v. *House*, 145 Va. 742, 134 S. E. 673; *Browning* v. *Bluegrass Hardware Co.*, 153 Va. 20, 149 S. E. 497; *Blackwell* v. *Virginia Trust Co.*, 177 Va. 299, 14 S. E. (2d) 301.

The words of the statute are clear and unambiguous. It is provided that an "estate not exceeding one hundred

---

*"Section 5157. Estates in trust to be subject to debts of beneficiaries; *exception.*—Estates of every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would if those persons owned the like interest in the things holden or possessed, as in the uses or trusts thereof; *but any such estate, not exceeding one hundred thousand dollars in actual value, may be holden or possessed in trust upon condition that the corpus thereof and income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them; but no such trust shall operate to the prejudice of any existing creditor of the creator of such trust.*"

thousand dollars in actual value, may be holden or possessed in trust upon condition that *the corpus thereof and the income therefrom, or either of them,* shall be applied by the trustee to the support and maintenance of the beneficiaries *without being subject to their liabilities or to alienation by them.*" (Italics supplied.)

Corpus and income, it will be observed, are stated both in the conjunctive and disjunctive. The provision is double-barrelled. Both or either of them may be held and applied for the support and maintenance of beneficiaries "without being subject to their liabilities or to alienation by them." The words "and" and "or either of them" emphasize the inclusion of both within the protection of the statute. There would be no corpus to transmit to the beneficiary at the end of the trust if it might be disposed of by assignments of the beneficiary or levies of his creditors during the trust period. The plain language of section 5157 is to permit a donor, if he so wishes, to protect the estate he gives to his beneficiary from the latter's spendthrift tendencies, which may as well affect the principal of the trust as the income therefrom.

The statute permits a donor to create such a trust within the limitation of $100,000, irrespective of the station in life of the beneficiary or his current needs. When the amount is specified in the instrument creating the trust, there is no occasion for the court to inquire into the needs of the donee. No distinction is made by the legislature between the policy of protection of income and protection of corpus, nor does there seem to be any logical distinction between either, so long as the trust fund remains in the hands of the trustee subject to the provisions of the trust instrument.

*Sheridan* v. *Krause,* 161 Va. 873, 172 S. E. 508, 91 A. L. R. 1067, would seem to set at rest any doubt about the purpose and effect of Code, section 5157. In that case, Mr. Justice Epes exhaustively reviewed the English and American authorities on the subject of spendthrift trusts, and the history of and the reason for the enactment of sec-

tion 5157. Therein, it was definitely held (1) that the last clause of the section is clearly remedial and not restrictive (page 895); (2) that in its enactment, it was the intention of the legislature to make a material change in the public policy of this State on the subject of spendthrift trusts (page 895); (3) that this public policy permitted "the whole of the income or the corpus of a trust estate, not exceeding $100,-000 in actual value," to be held in trust for the support and maintenance of a person without being subject to alienation by him or to his debts when the creator of the trust so provides, "whether such amount be reasonably necessary or proper for his support and maintenance or not" (pages 896-903); and (4) that "an equitable fee simple or absolute equitable estate may be given to a person subject to any spendthrift trust for his benefit for his life, or a lesser period, which, under section 5157, would be good if the remainder in the trust property were given to another." (page 901).

Eminent textbook writers, although they voice vigorous opposition to any statute or public policy imposing restraint upon the alienability of the corpus of spendthrift trusts, concede that many States have adopted such statutes and that, even in the absence of statute, a majority of the courts, passing upon the question, have upheld the validity of such restrictions. Griswold on Spendthrift Trusts (1936) pages 41, *et seq.;* Gray on Restraints on the Alienation of Property (2d Ed.) sections 241-243. See Annotation on Spendthrift Trusts, 119 A. L. R. 19, for full discussion and citation of cases.

While our statute and our determination of the case of *Sheridan* v. *Krause, supra,* make it unnecessary for us to refer to decisions from other jurisdictions, it may be interesting to the profession to examine the following cases which support our conclusion: *Nichols* v. *Eaton,* 91 U. S. 716, 23 L. Ed. 254; *In re Beck's Estate,* 133 Pa. 51, 19 A. 302, 19 Am. St. Rep. 623; *Boston Safe Deposit, etc., Co.* v. *Collier,* 222 Mass. 390, 111 N. E. 163; *Erickson* v. *Erickson,* 197 Minn. 71, 266 N. W. 161, 267 N. W. 426; *Von Kesler* v. *Scully,* 267 Ill. App. 495; *Calhoun* v. *Markow,* 168 Miss. 556,

151 So. 547; *Gordon* v. *Tate*, 314 Mo. 508, 284 S. W. 497; *Weller* v. *Noffsinger*, 57 Neb. 455, 77 N. W. 1075; *Haskell* v. *Haskell*, 234 Mass. 442, 125 N. E. 601; *Kelly* v. *Kelly*, 11 Cal. (2d) 356, 79 P. (2d) 1059, 119 A. L. R. 71; *Allen* v. *Tate*, 6 F. (2d) 139; *Jones* v. *Harrison*, 7 F. (2d) 461; *Suskin* v. *Rumley*, 37 F. (2d) 304.

Nevertheless, the guardian *ad litem* for the infant defendant contends that *Sheridan* v. *Krause, supra,* supports the holding of the trial court that the assignment by Alderman, Jr., of a portion of the corpus of his restricted trust to take effect upon his thirty-fifth birthday was valid and binding. It is not claimed that the income from that trust was assigned or that it was subject to alienation. The agreement between the parties as to income was expressly limited to such as came from the unrestricted portion of the son's legacy.

The decision in *Sheridan* v. *Krause, supra,* is based upon a set of facts which materially differ from those now before us. The terms of Sheridan's will and the codicil thereto, as interpreted by the court, not the provisions of the statute, were the controlling factors there. In interpreting their peculiar language, in the light of the circumstances surrounding that testator, it was held that the intention therein expressed by the donor was to give to his son, Leo, "the whole beneficial interest (unlimited in duration) in the property he defines as 'his share' of the estate; but to give him that interest subject, during his lifetime, to a discretionary trust created by the testator for his (Leo's) protection." The trustee was to hold the property free from beneficiary's debts. She was given a wide discretion as to the purposes for which, the time at which, and the amounts which should be paid to him out of income from the property, and the further discretion upon the happening of a certain event to turn over the possession and control of the property to the beneficiary. (161 Va., page 887).

In that case, there was no provision for the protection of the corpus of the trust estate in transmission to the son at the end of the trust, no gift over of the corpus of the trust fund in the event that the beneficiary should die before it

should be transmitted to him by the trustee, nor any provision that, in the event of his death, it should revert to his estate, nor any power in the trustee to appoint any other person to receive it. It was found that while the will did not expressly limit the purpose of the trust to the support and maintenance of the beneficiary, such was its dominant purpose to the extent the trustee might consider proper; but there was nothing in the will or in the codicil which indicated an intention to subject the principal to the spendthrift trust other than to preserve the rights of the beneficiary to employ the income therefrom in the discretion of the trustee for an unlimited time, free from the debts and claims of his creditors. (161 Va. at pages 887 and 903).

That the determination of that case turned upon the point that the will made no provision for the protection of the corpus of the trust, beyond the limits stated, is emphasized by Mr. Justice Epes' supporting citation of *In re Hall's Estate*, 248 Pa. 218, 93 A. 944, 2 A. L. R. 855, wherein it was said: "There is nothing in the will or in the codicil which indicates an intention to subject the principal to the spendthrift trust, neither is there a provision for protection of the corpus of the estate in transmission to the beneficiaries at the end of the trust, as in *Beck's Estate*, 133 Pa. 51, 19 Am. St. Rep. 623, 19 Atl. 302, * * * * ."

It is evident that the will of Dr. Alderman was prepared by a skilled, legal draftsman, and that it needs no interpretation by the court. It speaks for itself. Its languages, terms, and provisions are clear and express. The intent and purpose of the testator are equally clear, distinct, and unambiguous. We need only give to the words of the will their ordinary meaning. It is not necessary to go beyond the will to ascertain the testator's intent and purpose.

The language setting up the restrictions against alienation of the trust estate is in the very words of the statute, and relates to "the corpus thereof and the income therefrom, or either of them." The testator to make assurance doubly sure, in a separate paragraph says, of the restricted trusts for his wife and son: "These two distinct and separate trusts

are created by me in accordance with provisions of Section 5157 of the Code of Virginia of 1919."

The ninth clause of the will provides that the executor "shall turn over and deliver" to the beneficiary, when he reaches the age of thirty-five years, "in cash or in securities at market value, a sum equivalent to one-half of the entire value of the principal amount of the whole of his said trust fund as of that date, that is to say—one-half of the corpus of the trust fund for his support and maintenance, and one-half of any other sums my said Executor may then hold in trust for my said son."

In the fourteenth, it is directed that "in the management of my said estate all payments of income, and of principal, shall be made whenever practicable, to no one other than to the Beneficiary named."

The eleventh repeats the theme of the testator by requiring in the event the corpus of the trust for his son's support and maintenance is increased, as therein provided, "to the limit allowed by section 5157," that both "the principal and income" of the restricted funds shall be treated as subject to the statute and the provisions of the will.

The will read as a whole expresses the same purpose as emphatically as language can express it,—that is, that both the corpus and the income therefrom shall be held by the trustee for the support and maintenance of the son and be thereafter transmitted by the trustee to the son in accordance with the provisions of the will, or to named beneficiaries in the event of the death of the son before the end of the trust.

In this case, it was the right of Dr. Alderman to control his bounty and to dispose of his property in any legal manner he saw fit. This he undertook to do in the clearest manner. It was his right, and manifestly his purpose, within the limitations of Code, section 5157, to place the corpus of the restricted trust in the hands of his son when he became thirty-five years of age, free from the claims of creditors and assignees arising during the prior years. That right and intention cannot be subordinated to the power of

the beneficiary or any claimant against him. To come to any other conclusion would be to make a will for Dr. Alderman, which he did not intend to make,—a will in violation of lawful restrictions imposed by him in the distribution of his own property.

Spendthrift trusts, not repugnant to the law, are allowed to give effect to the will of the donor and not because of any special consideration for the donee. As said in Perry on Trusts, section 386 A: "Any conveyance whether by operation by law or by act of any of the parties, which disappoints the purposes of the settlor by diverting the property or the income from the purposes named, would be a breach of the trust."

Counsel for the infant defendant presents two other theories for upholding the assignment to his ward,—one, that her claim is for support, and the other that her claim is for damages by reason of a violated contract.

The claim under the assignments is based upon contract and not for support. The infant's claim for support is based upon a moral and legal obligation, and there is no charge that he has violated that obligation. It is not an issue here. The father, according to the record, has contributed to the support of the infant more than $600 per year, the amount stipulated in his agreement of January 5, 1933, and has, in addition, made her an allotment of $25,000. It is not necessary to consider her further claim for support at this time. The statutes of Virginia provide relief in proper cases for support of family dependents.

There is no pleading in this case alleging a claim for damages on account of a breach of contract. There is no evidence of the amount of damages, if any, nor does the record show that the question of damages for breach of the contract was considered in the conclusion reached by the trial court. Since the assignment was invalid and contrary to the public policy of this State, as expressed by Code, section 5157, it was unenforceable and no rights accrued thereunder.

We are here concerned with the right of Alderman, Jr., to receive funds from a restricted trust in accordance with a provision of the instrument creating that trust. That trust is protected under the will of Dr. Alderman, as well from liability for breach of contract as from the enforced performance of an invalid contract. Any other conclusion would permit that to be done indirectly which cannot be done directly and sanction a violation of the donor's will.

We are of opinion, therefore, to reverse so much of the decree of the trial court as upheld the validity of the assignment of Edwin A. Alderman, Jr., made before he was thirty-five years of age, in that portion of the restricted trust which became payable to him upon attaining the age of thirty-five years, and we affirm so much of the decree as directs, in accordance with the assignment of October 29, 1941, the payment of the sum of $25,000 to the guardian of the infant, Anne Erwin Alderman, from any trust funds due by the trustee to Edwin A. Alderman, Jr., and we remand this case to the trial court for such further decrees and orders as may be necessary to carry out the conclusions herein expressed and to determine any questions which may arise as to the proper accounting and charging of the $25,000 assignment, as well as the costs and allowances in this cause.

*Reversed in part, affirmed in part, and remanded.*