# Staunton.

## RACHEL THOMAS, AND OTHERS v. C. W. HOUSE, AND OTHERS.

### September 23, 1926,

1. WILLS—*Definition—Construction—Intention of Testator.*—In the construction of wills the object is to ascertain the meaning of the testator. A will is but the legal declaration of a person's mind, his intent, his wish, his will, as to the disposition of his property after his death.

2. WILLS—*Spendthrift Trusts—Trusts for Benefit of Son and his Family.*—A father devised land to his son for his natural life, "to be used by him only, for the purpose of supporting himself and his family, but said land during his lifetime shall not be sold for his debts, shall not be liable for any indebtednesss which he now may owe or hereafter contract."

    *Held:* That, construing the language of the will as a whole, it was the intention of the father to preserve the estate devised in its entirety and to protect it from the present or future creditors of the son; and the testator intended that the estate should afford support for the children as well as for the father.

3. WILLS—*Spendthrift Trusts Prior to Section 5157 of the Code of 1919.*—Prior to the enactment of section 5157 of the Code of 1919, known as the spendthrift trust act, the very language of a will, devising real property to a son of testator to be used only by the son for the purpose of support for himself and his family, the land not to be liable for the son's indebtedness, would have defeated the object sought to be obtained for the reason that the statute of 1887 (Code of 1887, sec. 2428) provided that estates in trusts should be subject to the debts of the beneficiary. By an amendment to this statute (Code of 1919, sec. 5157) an estate not exceeding $100,000 may be held in trust for the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them.

4. TRUSTS AND TRUSTEES—*Creation of Trusts.*—Technical language is not necessary in an instrument creating a trust.

5. TRUSTS AND TRUSTEES—*Equity Will Not Permit a Trust to Fail from Want of a Trustee.*—Whenever a trust is created by the terms of the instrument, equity will not permit it to fail because of the lack of a named trustee.

6. TRUSTS AND TRUSTEES—*Spendthrift Trusts—Alienation by the Benefi-*

*ciary—Case at Bar.*—In the instant case a father in his will gave his son an estate for his natural life in a tract of land "to be used by him only, for the purpose of supporting himself and his family, but said land during his lifetime shall not be sold for his debts, shall not be liable for any indebtedness which he now may owe or hereafter contract."

*Held:* That a trust estate was created by the language of the will for the benefit of the son and his family and that an attempted conveyance of the land by the son was void.

Appeal from a decree of the Circuit Court of Russell county. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Bird & Lively*, for the appellants.

*Finney & Griffith*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This was a suit in equity, instituted by the appellees against the appellants, to partition a part of the lands of which George W. House died seized and possessed.

George W. House was the father of C. W. House and Rachel Thomas (*nee* House), and the grandfather of the other parties litigant. He was the owner of two tracts of land situated in Russell county, comprising three and one-half acres, and twenty acres, respectively. George W. House died testate, his last will and testament being as follows:

"I, George W. House, a citizen of Russell county, Virginia, being of sound mind and disposing memory, do make and publish this my last will and testament, hereby revoking all former wills made by me, in manner and form following:

"First: I will and devise to my son, Charles W. House, during his natural life that certain tract or parcel of land lying and being in Lebanon magisterial district of said county north of the macadam road opposite to the home of my daughter, Rachel Thomas, and being all of the land owned by me lying north of said road and supposed to contain twenty acres, this land is devised to C. W. House to be used by him only, for the purpose of supporting himself and his family, but said land during his lifetime shall not be sold for his debts, shall not be liable for any indebtedness which he now may owe or hereafter contract, the estate devised to him in said land being the use of same for the support of himself and his family during his natural life.

"Second: I give and devise to my daughter, Rachel Thomas, that certain tract or parcel of land owned by me, lying and being in said county and in the forks of said macadam road and the road leading east to Stuart's Mill, on which is situated a storehouse, dwelling house and other buildings and supposed to contain three and one-half acres; this land is devised to my daughter, Rachel, during her natural life.

"Third: I give, bequeath and devise unto my ten grandchildren, being the four children of C. W. House and the six children of Rachel Thomas, all of the said two tracts of land hereinbefore devised to C. W. House during his lifetime and to Rachel Thomas during her lifetime, said two tracts of land to be equally divided between my said ten grandchildren, they to have and own the same in fee simple.

"In witness whereof, I hereunto set my hand and affix my seal as this my last will and testament, this the 5th day of May, 1923.

"G. W. HOUSE.   (Seal)."

To the original bill of complaint appellants demurred, assigning as their second grounds of demurrer, the following:

"Defendants deny that complainants or any of them have or had at the time this suit was brought any right to partition any of the land in controversy or any part thereof."

The demurrer was sustained. Thereupon, a supplemental bill was filed, alleging that Jeb House, one of the complainants, had acquired the life estate of his father, C. W. House, in the twenty acres of land devised by George W. House, and was also the owner of a one-tenth undivided reversionary interest in the twenty acre tract of land.

To this supplemental bill the defendants demurred, but the court overruled their demurrer. Thereupon, the defendants filed their separate and joint answers, denying that complainants were entitled to any relief.

The chancellor, being of the opinion that, under the will of George W. House, C. W. House acquired a life estate in the twenty acres of land devised, and that having sold the life estate to Jed House, who was the fee simple owner of a one-tenth interest therein, decreed that the latter was entitled to a partition thereof. The correctness of this decree must be determined by a construction of the will of George W. House, *supra*.

The rule for the interpretation of wills has been repeatedly stated in the decisions of this court. *Conrad v. Conrad, Exor.,* 123 Va. 716, 74 S. E. 206, and authorities cited.

[1] In *Seefried* v. *Clarke,* 113 Va. 370, 36 Va. App. 274, Judge Keith aptly states the rule to be thus: "In the construction of wills the object is to ascertain the meaning of the testator. A will is but the legal declaration of a person's mind, his intent, his wish, his will, as to the disposition of his property after his death."

[2, 3] While the record does not disclose whether or not C. W. House was of frugal or of profligate tendencies, in considering the language of the will as a whole, one is driven to the conclusion that it was the intention of the father, the testator, to preserve the estate devised, in its entirety, and to protect it from present or future creditors of C. W. House.

Prior to the enactment of section 5157 of the Code of 1919, known as the "spendthrift trust act," the very language of the will would have defeated the object sought to be attained, for the reason that the statute of 1887 (Code 1887, sec. 2428) provides that "estates of every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or to whose benefit they are holden or possessed * * *." By the amendment to this statute now carried in the Code of 1919 as section 5157, an estate not exceeding one hundred thousand dollars "may be holden or possessed in trust upon condition that the corpus thereof and income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them."

From a further consideration of the language employed, it is manifest that the testator intended that the estate devised should afford a support for the children, as well as for the father, until the extinguishment of the trust estate by the death of the father.

[4] While the intent of the testator was to create a trust estate, the language employed was in no sense technical. This, however, is not necessary in an instrument creating a trust. *Bare's Ex'ors.* v. *Montgomery*, 143 Va. 303, 130 S. E. 230.

[5] The fact that C. W. House was not named in the will as a trustee is not important. Whenever a trust

is created by the terms of the instrument, equity will not permit it to fail because of the lack of a named trustee.

[6] To concur in the contention of the appellees would, in our view, defeat the "intent, the wish, the will" of the testator. C. W. House has already attempted to convey whatever interest he may have in the land devised. Should this conveyance be permitted to stand, his family will be deprived of the "use" of the land for their support.

A case in point is *Bank of Greensboro* v. *Chambers*, 30 Gratt. (71 Va.) 202, 32 Am. Rep. 661. It there appears that in contemplation of a marriage between Chambers and Miss Fannie Majors, Chambers conveyed to a trustee certain parcels of real estate and all his personal property, in trust for the separate use of the intended wife for life, remainder to their children. It was provided in the deed that the trustee, on the written request of the wife, could sell and reinvest on the same trusts. Chambers, who before marriage was a manufacturer of tobacco, after marriage carried on the business in the name of his wife, and to obtain advances of money to carry on the business, he and his wife and the trustee conveyed a house and lot to a trustee to secure such advances. In holding that it was the intent of the settlement to provide and secure a home and support and maintenance for the family, and that the conveyance was void, Burks, J., delivering the opinion of the court, said: "We do not find in the deed of settlement in this case any express interdiction or limitation of the *jus disponendi*, and of the incidental power to encumber and charge the separate estate to an extent involving alienation, but, if by a fair construction of the instrument, the exercise of these powers would be inconsistent with the plan and scheme of the

settlement, and would defeat the plain intent pervading the deed, they must be considered as much forbidden as if expressly denied."

To support the contention of appellees, that a life estate was devised, the cases of *Seibel* v. *Rapp*, 85 Va. 28, 6 S. E. 478, and *Bain* v. *Buff*, 76 Va. 371, are relied upon. We do not think these cases in point. In each of them the question was whether or not the instruments construed showed the absolute character of the estate disposed of. In the instant case the devise is to C. W. House (trustee) for the use and support of himself and family and then a gift over to the children of House and Rachel Thomas. Had the testator intended to devise a life estate to his son, no doubt he would have employed similar language to that employed in devising a life estate to his daughter, Rachel Thomas.

Being of the opinion that a trust estate was created by the language of the first clause of the will of George W. House for the benefit of C. W. House and family, and that C. W. House was appointed trustee of the estate without bond, the decree of the lower court will be reversed, and a decree entered here dismissing the bill of complaint.

*Reversed.*