## ROUNTREE v. LANE et al.
### No. 5479.

Circuit Court of Appeals, Fourth Circuit.
May 11, 1946.

Israel Steingold of Richmond, Va., for appellant.

Sam B. Witt, Jr., and Ellsworth Wiltshire, both of Richmond, Va., for appellees.

Before GRONER, Chief Justice of the U. S. Court of Appeals for the District of Columbia, and SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

By Article VI of his will A. Valentine Rountree left the residue of his estate to

the Central National Bank of Richmond in trust for the benefit of his wife and a son, his only child, on the following terms and conditions:

"(1) One-half of the net annual income from the trust estate shall be paid to my wife, Marguerite Timms Rountree, in quarterly instalments, for and during her lifetime.

"(2) The other one-half of the net annual income from the trust estate shall be paid to my son, Bunny Valentine Rountree, in quarterly instalments for and during his lifetime; provided, however, that should my said son be under the age of twenty-one (21) years at the time of my death, the income herein provided for him shall be paid to my wife (or his lawful guardian) for his maintenance, education and support until he attains the age of twenty-one (21) years.

"(3) At the death of my said wife, I direct and authorize my said Trustee to pay and deliver over to my said son, free and clear of all trusts, one-half of the corpus of the trust estate; provided, however, that should my said son be at that time under the age of twenty-one (21) years, such one-half of the corpus of the trust estate shall be continued in trust by my Trustee until my said son attains the age of twenty-one (21) years, and my said Trustee shall in the meantime pay to his lawful guardian the income therefrom until he attains majority, at which time the one-half of the corpus of the trust estate shall be paid over to him, free of all trusts, as hereinbefore provided.

"(4) At the death of my said son anything remaining in the trust estate shall be paid over, free of trusts, to the children of my said son, in equal shares; but if my said son leave no lawful issue him surviving, then at his death the Trustee shall pay and deliver over the corpus of the trust estate then remaining in its hands to such person or persons who at that time will be my heirs-at-law according to the Statutes of Descent and Distribution now in force and effect in the State of Virginia.

"(5) Should any beneficiary under the terms of this article of my will be under the age of twenty-one (21) years when he or she becomes entitled to share in the corpus of the trust estate, such corpus as to any such minor beneficiary shall be held in trust by my said Trustee, and only the net annual income of such minor beneficiary's share in the said corpus shall be paid to his or her guardian for his or her maintenance, support and education, until such minor beneficiary attains the age of twenty-one (21) years.

"(6) In the event that other children should be born subsequent to the execution of this will, it is my desire that they be admitted as beneficiaries under its provision upon the same basis as my son mentioned herein and take equal share with him.

"(7) With reference to the trust estate created in this article of my will, I direct that neither the corpus thereof nor any portion thereof, and neither the income from nor any portion of the income therefrom shall ever be subject to the liabilities or any portion of the liabilities of any of my said beneficiaries hereunder, or to alienation, in whole or in part, by them or any of them."

The testator died in 1929 when the son was fifteen years of age and neither he nor his mother had any source of income other than that received from the testator or from his estate. The son was adjudicated a bankrupt on November 5, 1942. At that time the corpus of the trust estate was of the value of approximately $78,021.89 and there is nothing to show that the value of the corpus exceeded this sum when the will was made or when the testator died. The trustee in bankruptcy lays claim to the remainder in the one-half of the corpus of the trust estate bequeathed to the bankrupt free from the trust at the death of the wife under § 3 of Article VI of the will, and also lays claim to the interest of the bankrupt in the income for life from the other half of the trust estate bequeathed to him under § 2 of Article VI of the will.

The question at issue is whether the provisions of § 7 of Article VI of the will created a spendthrift trust under the permissive terms of § 5157 of the Code of Virginia which is as follows:

"Estates in trust to be subject to debts of beneficiaries; exception.—Estates of

every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed, as in the uses or trusts thereof; but any such estate, not exceeding one hundred thousand dollars in actual value, may be holden or possessed in trust upon condition that the corpus thereof and income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them; but no such trust shall operate to the prejudice of any existing creditor of the creator of such trust."

■ So far as the interest of the bankrupt in one-half of the remainder of the corpus of the trust estate which was devised to him upon the death of his mother by § 3 is concerned, the matter is free from doubt. This one-half of the remainder of the estate was bequeathed by § 3 to the son free of the trust at the death of his mother and was therefore not within the scope of § 7 which related to the trust estate. The son has no interest in the income from this half of the trust estate during his mother's lifetime but has a vested remainder in the corpus thereof which comes into possession and enjoyment free from the trust upon her death. This remainder was not protected from creditors by § 7 but passed to the trustee in bankruptcy upon the adjudication.

It is contended that by reason of § 4 the son has only a contingent remainder or possibility of an interest in the one-half of the corpus of the estate left in trust for the benefit of the mother, and that under the rule of Howbert v. Cauthorn, 100 Va. 649, 42 S.E. 683,* such an interest is not subject to sale for the benefit of creditors. But it is obvious upon a careful consideration of Article VI of the will that § 4 refers to the one-half of the trust property from which the son enjoys the income for life, and which is to go to his children or descendants at his death. The disposition of the other half at the death of the mother is governed

by § 3 which clearly confers a vested title upon the son. See James v. Peoples National Bank, 178 Va. 398, 17 S.E.2d 387.

The more difficult question is whether the right of the son to receive one-half of the income from the trust estate during his life under § 2 also passed to his trustee in bankruptcy notwithstanding the provisions of § 5157 of the Virginia Code. This section was enacted to modify the rule laid down in Hutchinson v. Maxwell, 100 Va. 169, 40 S.E. 655, 57 L.R.A. 384, that restraints on alienation and spendthrift trusts are contrary to public policy and therefore void. The statute is remedial in character and legalizes spendthrift trusts "upon condition that the corpus thereof and income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries." The District Court held that § 7 of the Rountree will was ineffective to create a spendthrift trust because it failed to provide that the trustee should apply the income "to the support and maintenance" of the beneficiary. It was pointed out that express provision was made in §§ 2 and 5 that under the circumstances there described the income should be paid for the maintenance, education and support of the beneficiary while under the age of twenty-one years; and it was thought that the absence of a similar provision with respect to the income to be paid to the son after attaining the age of twenty-one and the lack of any extraneous fact showing such an intent, indicated that the testator did not intend to confine the payments to the specified purposes after the son should reach the age of twenty-one years. Hence it was held that the interest of the son in the income payable to him during his life under § 2 passed to his trustee in bankruptcy.

■ We find ourselves unable to agree with this interpretation of the will. The direction in §§ 2 and 5 of the will that the income set apart for the benefit of certain beneficiaries should be paid during their minority for their maintenance, education and support was the usual direction of a testator who desires to care for those who are the natural objects of his bounty. But

* Compare Copenhaver v. Pendleton, 155 Va. 463, 155 S.E. 802, 77 A.L.R. 324.

it does not seem reasonable to conclude that the testator did not intend the income to be used by the beneficiaries for the same purposes after they should reach the age of maturity and become qualified to receive and spend the income in their own right. The testator had been the sole support of the mother and son during his lifetime and obviously desired to keep them from want after his death by leaving the residue in trust for them and restricting them to the use of the income. The amount of the corpus was less than the maximum· sum mentioned in the statute and, although substantial, was not unduly large; and there is nothing to indicate that the income therefrom was more than sufficient to maintain the beneficiaries in the manner to which they had been accustomed in the testator's life. The father intended to safeguard the son against misfortune and improvidence and we see no reason why the will should not be enforced within the scope of the statute.

The decision in Sheridan v. Krause, 161 Va. 873, 172 S.E. 508, 91 A.L.R. 1067, supports this view. The will in that case directed that the share of an erring and needy son of the testator should be held in trust for him by a sister free from the debts and claims of all persons whatsoever and that the income therefrom should be paid to him as she might consider proper, and in case he should get free from debt and was, in her judgment, in a position to take care of his share, she was authorized to turn the same over to him. It will be noticed that the will did not specifically provide that the income should be used for the maintenance and support of the son. The court nevertheless sustained the provision as a valid spendthrift trust, because the language of the testator read in the light of the circumstances revealed a clear intention to create a trust for this purpose. The court said (161 Va. 895, 902, 903, 904, 172 S.E. 515, 91 A.L.R. 1067):

"The new part of section 5157 is clearly remedial and not restrictive, and is to be so interpreted. As we interpret it, the intention of the General Assembly in enacting the new matter contained in section 5157 was not merely to provide a begrudged exception to the application of the doctrine of Hutchinson v. Maxwell or to the rule· laid down in the old part of that section as it had been interpreted by this court in that case. Its intention was to make a material change in the public policy of the state on this subject, and to liberalize and humanize· the rule of Hutchinson v. Maxwell.

"* * * where it is held, or declared by statute, that it is not against public policy to permit a testator to provide that property shall be ·held in trust for the support and maintenance of a person without being alienable by him or subject to his debts, we are of opinion that there is no substantial reason for holding that it cannot be held free from his debts for that purpose merely because the testator unwittingly, or out of excessive zeal, has attempted to provide that it shall be held free from his debts not only for that purpose, but also for other purposes.

\*　　　\*　·　\*　　　\*　　　\*　　·\*

"It is suggested that a spendthrift trust for the support and maintenance of a person is not valid under section 5157, if the provision of the trust is that the trustee shall pay the income or corpus to the cestui que trust for his support and maintenance instead of providing that it 'shall be applied by the trustee' to his support and maintenance. Such a construction falls within the strictest letter of the statute, but not within its spirit. To give such a construction to the statute is in effect to hold that public policy requires that it shall be strictly construed and rigidly applied to the end that wherever possible provisions against alienation by and subjection to the debts of the cestui que trust may be held void. This is not the public policy which, we think, was bespoken by the General Assembly by the enactment of the new matter contained in section 5157.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Our conclusion is that, under the devise here in question, the property designated by the testator as Leo's share, or so much thereof as did not exceed $100,000 in actual value at the death of the testator, may be and is held by the trustee free from Leo's debts for the accomplishment of the purpose of his support and maintenance, but it is not held free from his debts for any other purpose.

*   *   *   *   *   *

"Section 5157 would seem to contemplate that a testator may provide that the whole of the income or the corpus of a trust estate, not exceeding $100,000 in actual value, shall be held free from his debts and expended for the support and maintenance of a cestui que trust, whether such amount be reasonably necessary or proper for his support and maintenance or not. But where, as in the instant case, the trustee is given the power to pay to him the income for such purposes as she may consider proper, but it is plain that the dominant purpose is to provide a support and maintenance for him, as against his creditors, the trustee may expend or pay to him for his support and maintenance only so much of the income as may be reasonably necessary or proper for such purpose."

See the analysis of this decision in Alderman v. Virginia Trust Co., 181 Va. 497, 514, 515, 25 S.E.2d 333. It is clear from these decisions that a bequest in trust, obviously intended for the support and maintenance of the beneficiary, falls within the terms of the statute although the will does not follow the precise terms of the statute and does not require the trustee to apply the income or corpus to the support and maintenance of the beneficiary but directs the trustee to pay the funds directly to the beneficiary. The provisions of the will under consideration fall within the purview of the statute, because they indicate the paternal purpose to provide for the support and maintenance of the son, and the allowance did not exceed the sum needed to accomplish this end.

The Central National Bank of Richmond finds itself in a dual position in this litigation. As trustee under the will it accepted the responsibility of executing the trust according to the intent of the testator. As a bank, acting in its own right, it undertook to accommodate the son on February 26, 1942, by lending him the sum of $3950, taking from him at the time an assignment of $100 per month out of the income payable to him under the trust and an assignment of the corpus payable to him upon his mother's death in an amount sufficient to discharge any part of the loan then remaining unpaid. A subsequent loan of $245 on September 1, 1942 from the bank to the son was similarly secured by an assignment of income at the rate of $15 per month. Payments on account of these loans appear to have been made by the bank as trustee prior to the adjudication in bankruptcy and by the trustee in bankruptcy thereafter. The bank, speaking in both capacities, asks us to sustain the validity of the assignments and to approve the payments received. For the reasons above set out we hold that the son was without power to assign the income payable to him under Article VI, § 2 of the will, but had the power to assign the corpus devised and bequeathed to him on his mother's death under § 3. We confine ourselves to these rulings, and do not undertake otherwise to determine the rights of the parties growing out of the transactions between them before and after the adjudication in bankruptcy. The case will be remanded for further proceedings in accordance with this opinion.

Modified and remanded.

