The **COLONIAL-AMERICAN NATIONAL BANK OF ROANOKE, Executor of the Estate of Eustace B. Stone, deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7360.**

United States Court of Appeals Fourth Circuit.

Argued March 12, 1957.

Decided April 8, 1957.

Arthur E. Smith, Roanoke, Va., for appellant.

Loring W. Post, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty. Dept. of Justice, Washington, D. C., John Strickler, U. S. Atty., and Thomas F. Wilson, Asst. U. S. Atty., Roanoke, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

In this estate tax case the question is whether or not the corpus of a trust created by the decedent during his life for the benefit of his wife is includible in his gross estate. The District Court held that it was properly included by the Commissioner as transferred property in which the decedent-settlor retained for his life the enjoyment or right to the income.

■ On April 1, 1947, the decedent, Dr. Eustace B. Stone, a physician of Roanoke, Virginia, conveyed to an individual and the appellant bank certain securities to be held in trust for his insane wife, with gifts over to other relatives upon her death. By the trust instrument, the trustees were given full discretion in management, without retention by the donor of any control or right to be consulted. The trustees were directed to pay the net income to the settlor's wife as long as she lived, but if she did not use "all, or any part of the income," it was to be added to the corpus. The trustees were empowered, in addition, to utilize the corpus if the income proved insufficient to meet Mrs. Stone's needs. However, it was elsewhere in the instrument provided that they should not invade the corpus "so long as [Mrs. Stone] has other funds of her own." During the four years between the creation of the trust and Dr. Stone's death in April, 1951, he continued to pay for her support, and the trust income was never used except for one hospital bill.

There was also a clause in the instrument explaining that the donor's purpose in creating the trust was to provide his wife "with an income sufficient to maintain her." It is this clause which the Government chiefly relies upon as justifying inclusion of the trust corpus in Dr. Stone's gross estate for tax purposes. Section 811(c) (1) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(c) (1) (B) requires the inclusion in the gross estate of any property transferred without consideration in which the decedent retained the right or enjoyment of income, and by Treasury Regulations 105, Section 81.18, the retention of such a right is deemed to occur where the transferred property or the income therefrom is to be applied to the discharge of a legal obligation of the donor. See Douglas v. Willcutts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3. The Commissioner assessed an estate tax deficiency on the theory that Dr. Stone retained the right to have the income of the trust applied to discharge his legal obligation to support his wife. The executor paid the additional taxes and brought suit for refund. From an adverse judgment in the District Court, the executor took this appeal.

The Government recognizes, as it must, that a husband may make a gift to his wife without affecting his duty of support, and there is no presumption that such a gift is in discharge of the donor's marital duty. Shanley v. Bowers, 2 Cir., 81 F.2d 13, 15. We think the totality of the circumstances negatives any implication that the trust was designed to discharge or relieve the decedent's legal obligation to support his wife. See Suhr v. Commissioner of Internal Revenue, 6 Cir., 126 F.2d 283; Estate of Sherman, 9 T.C. 594; Commissioner v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839; Shanley v. Bowers, supra. The disposition clause of the trust instrument, in clear and unmistakable language, directs the trustee to pay the income to the wife. It is an absolute gift, having no restrictions which limit its use to support only.

Moreover, the donor in no way reserved unto himself any right to have the income applied to his wife's support or restricted to that purpose. These circumstances are given further meaning by the undisputed fact that from the time the trust was created, Dr. Stone continued to support his wife until his death. Considered in the light of the unrestricted gift of income in the instrument, this conduct clearly manifests the donor's intention to secure his wife, but not to link to the gift any relief for himself from his financial responsibilities as a husband.

In addition, we think it noteworthy that though the trustees were empowered and directed in case of emergency to invade the corpus when necessary to meet all of Mrs. Stone's needs, they were forbidden to do this except when she had no "other funds of her own." Containing this provision, the trust document cannot fairly be read as contemplating the substitution of the trust in place of the husband as the source of the wife's support. It suggests rather that her other funds, including, of course, the husband's contributions to her, were to be looked to before invading the trust corpus. Only when other sources failed could the trust corpus be used—not to relieve the husband of any obligation, for he might then be dead or impoverished—but to relieve the beneficiary if her needs could not otherwise be met.

It is also not without significance that the trust, created when Dr. Stone was seventy-nine years of age, was to continue for twenty years. Thus, it would outlast the donor's normal life expectancy. It is, therefore, not unreasonable to infer that his primary concern was to provide his wife with adequate means after his death. Manifestly, it could hardly be said that assumption of the decedent's living obligation was the intended purpose of the trust. The motivation for this provision for an afflicted wife was unrelated to the husband's legal obligation, which was left unaffected. It was prompted by natural solicitude for her welfare and looked chiefly to a time

when all his legal obligations would be at an end. In setting up the trust Dr. Stone did not attempt to bargain away his duty of support; nor did he later seek to evade it.

We do not think that the force of the cumulative circumstances is in any measure detracted from by the language, totally separate from the unconditional directing clause, which declares that the transferor's purpose was to provide an income sufficient for his wife's maintenance. The tenor of these words, appearing as explanation of the trustees' authorization to invade the corpus, is that while he thought that the income would be sufficient, unforeseen emergencies might require augmentation of the income from principal. This, however, in no sense restricted the use of trust income to support only.

The Government's citation of Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916, does not aid its contention. That opinion held that the right or power to benefit from the income, and not the exercise or failure to exercise such power, was there controlling. That was a case where the donor, quite unlike the donor here, had reserved the right to modify or revoke the trust made for his wife. The fact that he did not revoke, but permitted his wife to receive the income, was treated as unimportant; and the fact that the donor retained "unfettered command" of the right to revoke the trust and enjoy the income at his option was considered controlling. Cf. Shanley v. Bowers, 2 Cir., 81 F.2d 13, 15. In contrast, the donor here reserved no right in or command over the corpus or income of the trust, but expressly directed payment of income to the wife. He reserved no benefit or advantage to himself; and no legal defense was attempted to be set up in the trust instrument or otherwise, nor could it have been asserted, by reason of the gift, against a claim for support. Though in a suit for support or alimony such a gift might be an equitable consideration, it could not be raised as a legal bar to the wife's claims.

■ If, as we have seen, the other circumstances are not sufficient to require inclusion of the trust in the gross estate of Dr. Stone, we do not think it is made includible by the settlor's effort to bring the trust within the Virginia spendthrift trust statute. Section 5157 of the 1942 Code of Virginia; now Section 55–19 of the Virginia Code of 1950. Our interpretation of the trust instrument, based upon the reasons above set forth, is not affected by this. The purpose of the spendthrift trust, which Virginia law permits in cases where the corpus does not exceed $100,000.00 (as is the case here) is to prevent alienation and to free the income from claims of the beneficiary's creditors. We need not concern ourselves with the question whether, in this instance, the protection of the statute will be permitted only to the extent necessary for the beneficiary's maintenance. Nor are we called upon to adjudicate whether, if Virginia permits spendthrift trusts only for support, the settlor succeeded in creating a valid spendthrift trust in view of the circumstances discussed hereinbefore. See Sheridan v. Krause, 1934, 161 Va. 873, 172 S.E. 508, 91 A.L.R. 1067; Alderman v. Virginia Trust Co., 1943, 181 Va. 497, 25 S.E.2d 333; Rountree v. Lane, 4 Cir., 1946, 155 F.2d 471. For a general discussion of the subject, see Griswold on Spendthrift Trusts, 2d Ed., Secs. 227–229. The suggested inquiries, while interesting, are not material to the issue here.

Reversed and remanded for recomputation of the tax in accordance with the views herein expressed.

Reversed and remanded.