In re Betty Lee Taylor WILSON, Bankrupt.

Charles R. ALLEN, Jr., Trustee, Plaintiff,

v.

Betty Lee Taylor WILSON, the First National Exchange Bank of Virginia, Defendants.

Bankruptcy No. 79–00510.

United States Bankruptcy Court, W. D. Virginia.

March 20, 1980.

Charles R. Allen, Jr., Roanoke, Va., for plaintiff.

Frank N. Perkinson, Jr., Perkinson & Perkinson, Roanoke, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Plaintiff, Charles R. Allen, Jr., Esq., Trustee, pursuant to *Rule* 701 *Federal Bankruptcy Rules of Procedure* filed Complaint herein seeking recovery of certain trust assets[1] held by First National Exchange Bank of Virginia, Trustee, who was

---

1. The trust assets consisted of proceeds of life insurance policies in the aggregate amount of $162,000.00.

joined herein as a party Defendant with Betty Lee Taylor Wilson, the Debtor. The facts were stipulated by the parties, which essentially consists of the trust document itself.

■ The question presented here is whether or not the Debtor's interest in trust principal or income is an asset of her bankruptcy.

The facts appear as follows:

Betty Lee Taylor Wilson, the Debtor, is a beneficiary under a trust set up by her deceased husband, Edgar C. Wilson. The Trust Agreement, hereto attached as Exhibit A, is dated March 24, 1970 and is with The First National Exchange Bank of Virginia. The Agreement establishes two trusts, a wife's trust and a family trust.

Under the wife's trust, the wife is to receive during her lifetime "all of the net income." The trustee has the power to invade the corpus when necessary for the support and maintenance of the wife. Wife has a testamentary power of appointment over the principal.

Under the family trust, the trustee shall pay out whatever amount of the income he shall "deem proper or necessary for the comfortable support and maintenance of Donor's wife and/or . . . children." The trustee is also given the right to invade the principal if necessary. The principal of the family trust is given to the children upon the wife's death.

The Trust Agreement also provides: "To the extent allowed by the law of Virginia, no assignment of interest by any beneficiary of any trust created herein, whether of income or principal, or both, shall be valid or binding upon the Trustee." Debtor claims that this provision created a spendthrift trust, and this is not included as property or assets subject to administration by the trustee in her bankruptcy.

■ Spendthrift trusts are valid in Virginia and are exempt from the reach of the trustee in bankruptcy. See *Rountree v. Lane*, 155 F.2d 471 (4th Cir. 1946); *Sheridan v. Krause*, 161 Va. 873, 172 S.E. 508 (1934). Hence, the question for decision is whether or not a spendthrift trust was created under the law of Virginia.

■ Virginia has not always recognized spendthrift trusts. In fact, prior to 1919 spendthrift trusts were invalid in Virginia. 17 *M.J.* "Spendthrift Trusts" § 1, p. 161 (1979 Repl. Vol.). But by the enactment of the last clause of *Va.Code Ann.* § 55–19 (formerly § 5157, 1919), the General Assembly joined a growing majority of states that recognized spendthrift trusts. See generally 76 *Am.Jur.*2d "Trusts" § 162 *ff.*; and see *in accord, Thomas v. House*, 145 Va. 742, 134 S.E. 673 (1926); *Dunlop v. Dunlop*, 144 Va. 297, 132 S.E. 351 (1926). Section 55–19 provides:

> "Estates of every kind holden or possessed in trust shall be subject to the debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed as in the uses or trusts thereof; but any such estate, not exceeding two hundred thousand dollars in actual value, may be holden or possessed in trust upon condition that the corpus thereof and income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them, but no such trust shall operate to the prejudice of any existing creditor of the creator of such trust. (Code 1919, § 5157; 1958, c. 214.)"

Either corpus or income or both may be held in trust and applied for support and maintenance of beneficiaries without being subject to their liabilities or alienation by them. The statute is at once protective, remedial and not restrictive and should be construed liberally. *Alderman v. Virginia Trust Co.*, 181 Va. 497, 25 S.E.2d 333 (1943).

The purpose of the 1919 statutory modification was clearly to "liberalize and humanize" the strict rule of *Hutchinson v. Maxwell*, 100 Va. 169, 40 S.E. 655 (1902) and its line of decisions. *Sheridan v. Krause*, 161 Va. 873, 172 S.E. 508 (1934). If we are to

construe the statute in a less restrictive manner, then the intent of the settlor must be considered. As stated by the Court in *Sheridan, supra,* the purpose of the legislature and its intention . . . " was to make a material change in the public policy of the state on this subject . . . ."

■ Public policy does not require that the Virginia statute shall be strictly construed and rigidly applied to the end that whenever possible provisions against alienation by and subjection to the debts of the beneficiary may be held void. *Sheridan, supra.* See also *Colonial-American National Bank v. U. S.* (4 Cir. 1957) 243 F.2d 312.

In *Sheridan, supra,* the court recognized that the principal inquiry is to determine intention which must prevail unless it violates a rule of law. In determining intent, the whole instrument must be examined.

■ In construing an instrument, there are two inquiries to be made. First, what is the intention of the testator? As Judge Carr in *Land v. Otey,* 4 Rand. (25 Va.) 213 stated, "This is the animating spirit, the essence, the soul, of the will. The words are the clothing, the mere vehicle used, to convey his ideas. When we once ascertain the intention of the testator, that is the governing principle, and must prevail, unless it violate some rule of law."

■ In order to be a valid spendthrift trust, it is essential that the trust comply with the requisites pertaining to its creation and validity. Basically, these elements include a competent settlor and trustee, an ascertainable trust res, and certain beneficiaries. *See* 76 Am.Jur.2d "Trusts" § 31. These requisites seem to have been satisfied: a competent settlor—Edgar C. Wilson, decedent; a trustee-First National Exchange Bank; a trust res-proceeds of life insurance policies; certain beneficiaries—wife and children of the deceased.

■ Once it has been established that the requisite formalities have been complied with, this court must focus its attention on the intent of the settlor when he created the trust at issue. We are bound to construe the instrument as far as possible to carry out the intention and purpose of the settlor. *See* 76 Am.Jur.2d "Trusts" § 150, *Sheridan* and *Colonial-American, supra.*

■ The settlor must not only intend to create a trust but must clearly manifest the intention to create it with the applicable spendthrift provisions. This trust includes the following language in Article 1, ¶ A:

The Donor has executed this Revocable Trust Agreement as a part of a plan to arrange for the continued management of his property interests *and to provide for the maintenance; comfort and support of his wife and for the maintenance, comfort, support and education of his children.* . . . " (emphasis added)

The Settlor intended to restrict his wife to "a reasonable number of luxuries of life." (Art. V, A1) The Trustee was vested with the discretion to invade the principal for the benefit of either the wife or the children. (See Article V.) Finally, with respect to liabilities of the beneficiaries, the Trust provides in "Article X, Miscellaneous":

"To the extent allowed by the law of Virginia, no assignment of interest by any beneficiary of any trust created herein, whether of income or principal, or both, shall be valid or binding upon the Trustee."

Even if this provision did not explicitly exempt the beneficiaries from their liabilities, some commentators indicate there is no need for express language. *See* 76 Am. Jur.2d "Trusts" § 150 where it is noted that the intention to create such a trust may be based on construction of, and inference from, the trust instrument read as a whole. In accord, see 7 M.J. "Spendthrift Trusts" § 1, p. 162 where it is noted:

To create a spendthrift trust it is not essential that the instrument should denominate the beneficiary a spendthrift, or give reasons for creating the trust, or contain all restrictions and qualifications incident to such trust, or contain an express declaration that the interest of the cestui que trust in the trust estate shall be beyond the reach of creditors, if the intention of the testator or donor to cre-

ate such trust is clearly disclosed by the instrument as a whole.

(Note that Am.Jur.2d is slightly different;)

While it is not essential that the beneficiary be in fact a spendthrift, or that the settlor state his reasons or motives, it is essential to the existence of a trust of this character that there be some restraint on, or immunity of, the interest of benefit of the cestui que trust from voluntary or involuntary alienation. 76 Am. Jur.2d "Trusts" § 149, p. 390.

The above language states generally the principles emphasized by Judge Soper in *Rountree, supra,* to the effect that the spirit of the Statute must be followed and not simply the letter of the Statute because to follow the letter many times would defeat the intent of the legislature when the Statute was enacted.

While mere precatory language such as "with the understanding" used in *Carson v. Simmons,* 198 Va. 854, 96 S.E.2d 800 (1957) is not enough to create a valid spendthrift trust, such language as "[for] the support and maintenance of my said son . . . without being subject to his liabilities or to alienation by him" has been held valid. *Alderman, supra,* 25 S.E.2d at 334.

In the trust instrument before this court, the express stated purpose of the trust is this:

". . . to provide for the maintenance, comfort, and support of his wife and for the maintenance, comfort and support and education of his children. . . ." (See Article 1, Paragraph A)

Later in Article V, Paragraph B, 1, the Trustee is given the discretion to pay over to the wife

whatever amount or amounts of the net income and/or the principal of the Family Trust the Trustee shall deem proper or necessary for the comfortable support and maintenance of Donor's wife and/or for the comfortable support, maintenance, and education of one or more of the living children and/or other descendants of the Donor.

Further, the Donor Edgar C. Wilson makes his intent clear and unambiguous: "It is the Donor's purpose to provide for his family's support and maintenance, the education of his children, and a reasonable number of luxuries."

The quoted provisions of the Trust clearly meet the first test of *Va.Code* § 55–19, to-wit: ". . . corpus . . . and income . . . shall be applied by the trustee to the support and maintenance of the beneficiaries . . . ."

Additionally, there is a second requirement, that the corpus and income of the trust is to be applied as noted above but is not to be subject to their debts or to alienation by them. Article X of the instrument provides as follows:

To the extent allowed by the law of Virginia, no assignment of interest by any beneficiary of any trust created herein, whether of income or principal, or both, shall be valid or binding upon the Trustee.

In considering this language along with the instrument as a whole leads clearly to the conclusion that the "no assignment" and "law of Virginia" language expressed the intent that alienation was prohibited and *Section* 55–19 was being incorporated. Better language may have been employed, but it is the court's function to construe that which is written. This construction must be one of liberality in favor of the public policy of Virginia as expressed by the legislature sustaining spendthrift trusts. Unless the scrivener incorporates *verbatim* the language of the statute (Section 55–19) courts will frequently be called upon to determine the intent and meaning thereof. Prior court decisions uniformly express the liberal construction view and this certainly is in accord with legislative intent.

In *Sheridan v. Krause, supra,* the court sustained the finding of a spendthrift trust including the words "free from the debts and claims of all persons whatsoever." In *Rountree v. Lane,* 155 F.2d 471 (4th Cir. 1946) the settlor carefully tracked the statutory language and the court found a spendthrift trust.

The language may be explicit as it was in *Rountree* and *Sheridan, supra.* But, according to *Alderman v. Virginia Trust Co., supra,* the statute is not to be given a strict interpretation, especially if the settlor's intent is adduced from the instrument. And it may be implied from the instrument itself (*See Sheridan v. Krause, supra*; 17 M.J. "Spendthrift Trusts" § 2; 76 Am. Jur.2d, "Trusts", § 161) so long as it is not strictly construed or rigidly applied against the validity of spendthrift provisions. In this connection it is immaterial whether the intent to exclude creditors be expressed in terms or by implication. 7 Va.L.Rev. 213 "Notes" (1920–21) citing *Brooks v. Raynolds*, 59 Fed. 923.

The decedent's intent was clearly stated. He intended to provide for the support, maintenance, and comfort of his family upon his death. Secondly, he intended to prevent his beneficiaries from assigning their interests in the trust and be free from their creditors under the law of Virginia. This would include giving the Trustee in Bankruptcy an interest in the trust by virtue of § 70(a)(5) of the Bankruptcy Act which reads as follows:

(a) The trustee of the estate of a bankrupt . . . shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . .
(5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered.

Congress, in enacting the Bankruptcy Act recognized exemptions created by state law: "It has always been the policy of Congress, both in general legislation and in bankrupt acts, to recognize and give effect to the state exemption laws," *Holden v. Straton*, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018

(1905); *Meyer v. U. S.,* 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963).

If we look to the general purpose of a spendthrift trust, it will be evident that the trust before us is a spendthrift trust. Spendthrift trusts have been similarly defined by the authorities:

A recent case defines a spendthrift trust as one which provides a fund for the benefit of another, and secures it against his own improvidence, placing it beyond the reach of his creditors. 7 Va.L.Rev. 213, "Notes" (1920–21) citing *Carter v. Brownell*, 95 Conn. 216, 111 A. 182 (1920). *In accord* 76 Am.Jur.2d Trusts § 150.

In the same context, another Law Review article notes:

[Virginia] permits a kindly donor to provide the necessities of life for a careless and spendthrift donee without interference from his creditors or without alienation by him, but [Virginia] endeavors to provide that the trust estate shall only be large enough to fulfill that purpose. 7 Va.L.Rev. 237 "Note" (1920–21).

The settlor's intent is manifest from the document and that, along with the language from the trust itself (noted herein), the trust is found to be a spendthrift trust.

As if it were not clear from the authorities and arguments already urged, the Fourth Circuit narrowed and defined the law of Virginia in *Rountree v. Lane*, 155 F.2d 471 (4th Cir. 1946). Judges Groner, Soper, and Dobie were presented with facts similar to those at bar.

A testator had directed that his trustee on the death of the testator's wife, should pay over one-half of the corpus of a trust estate. The relevant provisions of testator's will were that the income from the trust was to be for the maintenance, education, and support of the testator's son until he reached 21 years of age; the testator further directed that, pursuant to Va.Code § 55–19, neither the income nor the corpus was to be subject to any liabilities incurred by his son. The issue before the Fourth Circuit arose over the latter provision; whether the provisions relevant to the "freedom from debts" language created a

spendthrift trust under the "permissive" terms of § 5157 (former *Va.Code* § 55–19).

In construing Section 55–19, the late distinguished Judge Soper stated in *Rountree, supra:*

> The statute is remedial in character and legalizes spendthrift trusts 'upon condition that the corpus thereof and income therefrom . . . shall be applied by the trustee to the support and maintenance of the beneficiaries.'

The Court followed the decision of the Virginia Supreme Court, quoting extensively from *Sheridan v. Krause, supra,* finding a valid spendthrift trust based on similar language in the instrument read in light of the circumstances which indicated a clear intent to create a spendthrift trust. Quoting again from *Sheridan* the Court noted:

> . . . it is plain that the dominant purpose is to provide a support and maintenance for him, as against his creditors . . . . *Rountree,* at 475.

Noting the *Alderman* decision, the Fourth Circuit holding a trustee's claim invalid, stated:

> "it is clear from these decisions [including *Sheridan*] that a bequest in trust, obviously intended for the support and maintenance of the beneficiary, falls within the terms of the statute although the will does not follow the precise terms of the statute . . . ."

From the foregoing, the Court concludes that the trust complies with the spendthrift trust laws of Virginia and is exempt from claims of the Trustee.

It is accordingly

### ORDERED

that the Complaint herein be, and the same is hereby dismissed.