**In re Fred K. MACKTA, Debtor.**

**No. 99–60253–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 18, 2000.

Leonard E. Starr, III, Sandston, VA, for debtor.

John H. Maddock, III, McGuire Woods LLP, Richmond, VA, for trustee.

### MEMORANDUM OPINION (AMENDED)

DOUGLAS O. TICE, Jr., Chief Judge.

This matter comes before the court on Leo Mackta's objection to exemptions claimed by debtor, Fred Mackta. Hearing was held March 13, 2000; at the conclusion of the hearing the court took the matter under advisement and allowed debtor and Leo Mackta to submit briefs. For reasons stated in this opinion, the court will: (1) allow debtor, at his option, to amend his homestead deed to allocate the $5,000.00 exemption among the items on his original homestead deed but will not allow debtor to amend the original homestead deed to include additional items; (2) overrule Leo Mackta's objection to exemptions claimed by debtor under Bankruptcy Code § 541(c)(2) for remainder interest in testa-

mentary trust established under the Last Will and Testament of Regina K. Mackta.

## I. FINDINGS OF FACT

Debtor's mother, Regina Mackta, died testate on January 15, 1997, at 85 years of age. Regina's Last Will and Testament named debtor as executor and trustee of her estate. Under the terms of the Will, probated in the Circuit Court for the County of Chesterfield, Virginia in 1997, a credit shelter trust was established (for the largest amount that could pass free of federal estate tax) that gave income to Leo for life and remainder to debtor.[1]

The relevant terms of Regina's Will that created the credit shelter trust with a spendthrift clause are as follows:

### Article III

3.1 If my Husband survives me, I direct that the Credit Shelter Amount (as hereinafter defined) shall be paid to my Trustee, in trust, for the following uses and purposes and the following terms and conditions:

3.1.1 My trustee shall manage, invest and reinvest such trust fund, shall collect and receive the income thereof and shall pay or apply the net income thereof to or for the benefit of my Husband ... during her [sic] lifetime.

3.1.2 My Trustee is empowered, at any time or times, to pay or allow to or for the benefit of my Husband, such part, parts or all of the principal of the trust as my Trustee may, in his absolute discretion, deem advisable for the main-

tenance, support, comfort and welfare of my Husband, without regard to the interests of any potential remainderman and irrespective of the fact that any such payment or application may exhaust the principal of the trust.

3.1.3 Upon the death of my Husband, the principal of the trust, as the same shall then consist (including and accrued income and any undistributed income), shall be paid to my son, Fred K. Mackta, if he is then living or, if he is not then living, to his then living issue, in equal shares, *per stirpes*, subject to the provisions of Article V hereof. I intentionally leave no part of this trust to my daughter, Betsy Scott.

.    .    .    .    .

### Article IX

Except as may be otherwise provided in this Will, no beneficiary hereunder shall be entitled to anticipate, alienate, assign or otherwise dispose of, or to encumber all or any part of, his or her interest in the net income or principal of my estate or of any trust herein created, nor shall any such interest be subject, while in the hands of my Executors or Trustees, to legal process on behalf of, or to the claims of, creditors of any such beneficiary.

Ex. 3, Will, art. III, ¶¶ 3.1–3.1.3, art. IX.

Debtor is embroiled in a family dispute that started in state court and is spilling over into this bankruptcy case.[2]

---

1. The trust currently holds between $400,000.00 and $500,000.00.

2. In 1995, debtor's father, Leo Mackta, gave debtor a power of attorney. Debtor's mother, Regina Mackta, died testate on January 15, 1997. Regina's Will named debtor as executor and trustee of her estate. Under the terms of the Will, a credit shelter trust was established that gave income to Leo for life and remainder to debtor. Regina's Will specifical-

ly stated that she intentionally left no part of the credit shelter trust nor any part of her estate to her daughter, Betsy Scott.

A few weeks after Regina's death, Betsy Scott and other family members offered to take Leo for a one week visit while debtor was out of town. (Leo is currently 87 years-old.) On February 5, 1997, Lester Machta, Leo's brother, and his wife, Phylis Machta, took Leo to Maryland. (Lester and Phylis Machta spell their last name differently than Leo and debt-

On January 5, 1999, a state court entered judgment in favor of Leo Mackta and against debtor for $176,264.46 plus interest, having found that debtor was without authority to make gifts from Leo Mackta's funds to family members. At issue was a power of attorney given by Leo Mackta to debtor that did not include an express power to make gifts.

On May 25, 1999, debtor filed a homestead deed pursuant to Virginia Code § 34-4 in the Chesterfield County Circuit Court. The homestead deed listed amounts for various items of personal property (total value of $14,900.00), debtor's primary residence (valued at $80,000.00), and a time share unit (valued at $7,000.00).

On November 10, 1999, debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Debtor's § 341 meeting of creditors was scheduled and held on December 7, 1999. The meeting was continued by the chapter 13 trustee because debtor had not yet filed his schedules, statement of financial affairs or a proposed chapter 13 plan.

or.) Since then, despite debtor's repeated requests, debtor has not been permitted to see or talk with his father outside of litigation.

Leo substituted Betsy Scott and Lester Machta as Leo's attorney in fact by a power of attorney dated February 21, 1997. Debtor filed suit, *Fred Mackta v. Leo Mackta and Betsy Scott*, in Chesterfield County Circuit Court (case # 97–668) to petition for appointment as guardian for Leo Mackta and determine the validity of the power of attorney held by Betsy Scott and Lester Machta. The petition included a temporary restraining order to prevent Betsy Scott from removing property from the residence of Leo and Regina pending determinations concerning what property belonged to Leo and what belonged to Regina's estate, as well as determine where Leo was and what he wanted to do with the property.

Betsy Scott filed the complaint *Betsy Scott v. Fred Mackta* in Chesterfield County Circuit Court (case # 97–672) for an accounting of the assets and income administered by debtor under his 1995 power of attorney. Betsy Scott also filed *Betsy Scott v. Fred Mackta* in Chesterfield County Circuit Court (case # 97–1558) to remove debtor as executor and trustee of Regina's estate. Debtor agreed to the appointment of Hugh Antrim as co-executor of Regina's estate to minimize litigation costs and expenses.

Due to competing claims, First Albany Corporation filed an interpleader suit, *First Albany Corp. v. Fred Mackta, Leo Mackta and Betsy Scott*, in the New York Supreme Court requesting appointment of a receiver for Leo's retirement account, which exceeded $500,000.00.

On January 5, 1999, the Chesterfield County Circuit Court entered judgment in case # 97–672 against debtor and in favor of Leo. The court found that debtor failed to prove the propriety of Visa payments and gifts made to himself and his family members. Debtor filed a bill of review, *Fred Mackta v. Leo Mackta*, in Chesterfield County Circuit Court (case # 99–528) challenging the validity of the judgment. A variety of post-judgment efforts occurred trying to satisfy the judgment against debtor, including garnishments filed against Regina's estate to attach debtor's remainder interest.

Counsel for Leo asserts that Regina's estate must pursue a claim against debtor for alleged unauthorized gifts made from Regina's funds that may have been made about the same time and in the same manner as the unauthorized distributions from Leo's funds. Hugh Antrim, in his capacity as co-executor of Regina's estate, filed a bill of complaint, *Hugh Antrim v. Fred Mackta and Leo Mackta*, in Chesterfield County Circuit Court requesting aid and guidance on the following issues: whether it is his duty to file suit on behalf of the Estate of Regina K. Mackta against debtor for gifts made from funds of Regina in 1995, 1996, and 1997; or, does Leo, as income beneficiary under the Last Will and Testament of Regina K. Mackta and Trust established thereunder, have standing to pursue the claim directly with the court? After debtor filed bankruptcy, Hugh Antrim requested relief from stay to proceed with his bill of complaint in state court. This court denied relief from stay.

On December 17, 1999, debtor filed his schedules, statement of financial affairs and a proposed chapter 13 plan. As part of his schedule C, property claimed as exempt, debtor included an amended homestead deed. Debtor's amended homestead deed fundamentally differs from the original homestead deed that was filed in state court on May 25, 1999, as follows: (1) the amended homestead deed includes some items not listed on the original homestead deed (e.g., debtor's remainder interest in a credit shelter trust funded by mother's Will); (2) the amended homestead deed omits some items listed on the original homestead deed; and (3) items that appear on both the amended homestead deed and the original homestead deed have different valuations (e.g., the coin collection is valued on the amended homestead deed at $500.00 but was valued on the original homestead deed at $1,000.00) and different exemption amounts (e.g., the total value of exemption claimed on the amended homestead deed is $12.50).

On January 20, 2000, Leo Mackta filed an objection to debtor's claimed exemptions.

Additional findings of fact are included in the conclusions of law section.

## II. Position of the Parties

### A. Exemptions Claimed Under Virginia Code § 34–4.

Debtor asserts the original homestead deed should be deemed a nullity because it was filed without the assistance of counsel and is fatally flawed.

Leo Markta asserts the original homestead deed is not a nullity, and because it claimed exemptions in excess of the amount allowed under the statute, debtor's ability to amend his homestead deed is limited to correcting descriptions, values and exemptions claimed on property listed on the original homestead deed.

### B. Exemptions Claimed Under Bankruptcy Code § 541(c)(2).

Debtor asserts that his remainder interest in Regina Mackta's credit shelter trust is exempt from the claims of his creditors under the spendthrift trust provisions of Virginia law and 11 U.S.C. § 541(c)(2).

Leo Mackta asserts that debtor has failed to make a proper claim for exemption. Specifically, he asserts that the claim for exemption can only be claimed under § 522, not § 541(c)(2). However, even if debtor's exemption claim is construed as a request for the court to declare that the trust is excluded from the bankruptcy estate, the spendthrift trust provisions do not cover debtor's remainder interest.

## III. Conclusions of Law

### A. Exemptions Claimed Under Virginia Code § 34–4.

Residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general (nonbankruptcy) federal law. *See* 11 U.S.C. § 522(b)(1) (allowing state to opt out federal exemptions found in 11 U.S.C. § 522(d)); Va.Code Ann. § 34–3.1 (Repl. Vol.1996) (opting out federal exemptions found in 11 U.S.C. § 522(d)). Under Virginia Code § 34–4, each householder is entitled, in addition to other exemptions that the householder may qualify for, to claim an exemption of up to $5,000.00 in real and personal property that they have selected.[3] However, once the householder

---

**3.** Exemption created.—Every householder shall be entitled, in addition to the property or estate exempt under [sections not relevant here], to hold exempt from creditor process arising out of a debt, real and personal property, or either, to be selected by the house-

has fully claimed exemptions under Virginia Code § 34–4 totaling $5,000.00, the householder has exhausted his or her right to exemption and is precluded from claiming any further exemptions under that section.[4]

There is nothing in the Virginia Code, or otherwise, that suggests that the original homestead deed would not be recognized as valid even though it listed property in excess of $5,000.00 and did not specify the exemption claimed. The original homestead deed was filed during a period in which enforcement efforts were being made to collect on a judgment entered by a state court against debtor and in favor of Leo Mackta. Courts would have liberally construed Virginia Code § 34–4 to protect debtor's property from judgment creditors. *See, e.g., In re Hayes,* 119 B.R. 86, 88 (Bankr.E.D.Va. 1990) (stating that "... the Virginia Homestead Exemption is intended to shield helpless and unfortunate debtors ... from the onslaught of creditors, and consequently must be liberally construed so as to afford the relief which the legislature intended the debtor to enjoy."); *In re Smith,* 22 B.R. 866, 867 (Bankr.E.D.Va. 1982) (stating that "Courts in Virginia are required to liberally construe statutes relating to homestead laws in favor of debtors in order to protect the debtors and their families."); *In re Perry,* 6 B.R. 263, 264 (Bankr.W.D.Va.1980) (quoting 31 Am. Jur.2d, *Exemptions* § 8 (1989) for the proposition that "... it is therefore, the almost universal rule that they (exemption statutes) should receive a liberal construc-

tion in favor of those intended to be benefitted and favorable to the object and purposes of the enactment ... and where there is doubt as to whether certain property is exempt or not, the doubt should be resolved in favor of the exemption."). It has long been settled that once having set property apart in an original homestead deed, a debtor cannot found a claim to a new homestead deed by attacking the validity of the original deed that was of the debtor's own making. *See Oppenheimer v. Howell,* 76 Va. 218 (1882).

Debtor is entitled to amend his original homestead deed to correct descriptions and values of properties listed in the original homestead deed. *See Homeowner's Fin. Corp. v. Pennington (In re Pennington),* 47 B.R. 322, 326 (Bankr.E.D.Va. 1985). Leo Mackta urges the court to pro rate debtor's exemption using the values as shown on the original homestead exemption. The court will allow debtor, at his option, to amend his homestead deed to allocate the $5,000.00 exemption among the items on his original homestead deed, *see* Va.Code Ann. § 34–4 ("property ... *selected by the householder* ... not exceeding $5,000 in value....") (emphasis added); otherwise, the court will have to allocate the $5,000.00 exemption.

However, because the original homestead deed listed property in excess of $5,000.00, debtor has exhausted his right to exemption and is precluded from claiming any additional items. *See* Va. Code Ann. § 34–21. A recorded homestead deed that lists property equal in value to the entire homestead exemption

---

holder, including money and debts due the householder not exceeding $5,000 in value. Va Code Ann. § 34–4 (Repl.Vol.1996 & Cum. Supp.2000).

4. When householder's right to exemption is exhausted.—When the maximum amount of property, whether real or personal, or both,

has been once set apart to be held by a householder as exempt under § 34–4 or § 34–4.1, he shall not afterwards be entitled to the exemption of any estate other than that so set apart or as otherwise provided by law.

Va.Code Ann. § 34–21 (Repl.Vol.1996).

cannot be amended to decrease the value of listed property in order to add other property not previously owned by debtor when the original homestead deed was filed. *See In re Emerson*, 129 B.R. 82, 84 (Bankr.W.D.Va.1991), *aff'd*, 962 F.2d 6 (4th Cir.1992).

B. Exemptions Claimed Under Bankruptcy Code § 541(c)(2).

Section 541(c)(2) provides the following exclusion from the otherwise broad definition of "property of the estate" contained in § 541(a)(1) of the Code: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy law* is enforceable in a case under this title."
*Patterson v. Shumate*, 504 U.S. 753, 757, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (quoting 11 U.S.C. § 541(c)(2)). "The natural reading of the provision entitles a debtor to exclude from property of the estate *any interest* in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Id.* at 758, 112 S.Ct. 2242 (emphasis added).

■ Having concluded that "beneficial interest" includes debtor's vested remainder interest, the court next determines whether the spendthrift trust provisions satisfy the terms of Bankruptcy Code § 541(c)(2). The trust was established and is administered in Virginia. Virginia Code § 55–19 authorizes the creation of spendthrift trusts. *See* VA. CODE ANN. § 55–19 (Repl.Vol.1995). The intention of the trust settlor with respect to the spendthrift provisions "must prevail unless it violates a rule of law." *Allen v. Wilson (In re Wilson)*, 3 B.R. 439, 442 (Bankr.W.D.Va.1980). If the requisite formalities have been complied with, the court is bound to construe the instrument as far as possible to carry out the intention and purpose of the settlor. *See id.* The language contained in Article IX of the Last Will and Testament of Regina K. Mackta specifies an intent to protect both the interest and the corpus of the trust from alienation or the claims of creditors. Thus, the court finds the trust is a valid spendthrift trust that protects debtor's interest.

■ Counsel for Leo Mackta raises two challenges to this conclusion. First, counsel contends that debtor is not a "beneficiary" as that term is used in Article IX. The Will does not define that term, so the court must look to its common usage. Beneficiary, "[a]s it relates to trust beneficiaries, includes a person who has any present or future interest, vested or contingent...." *See* BLACK'S LAW DICTIONARY 142 (5th ed.1979). Moreover, "remainder" is defined as "[t]he property that passes to a beneficiary after the expiration of an intervening income interest." *See id.* at 1162. Thus, debtor's vested remainder interest makes him a beneficiary. Second, counsel contends that even if debtor is a "beneficiary," his remainder interest is protected from the claims of creditors only "while in the hands of [Regina's] Executors or Trustees." Counsel asserts that once the interest vested, it passed into debtor's possession and is no longer in the hands of the executors or trustees. The court notes that under such a formalistic interpretation, no vested interest (e.g., income or remainder) would ever qualify. This is clearly contrary to the testator's intent, and the court considers the argument to be without merit.

Finally, debtor's interest in the spendthrift trust should be scheduled in a way that fairly makes the trustee aware of the potential distribution. "Since the debtor's

.interest in a spendthrift trust is *excluded* from 'property of the estate,' it is not, in a technical sense, an asset that can be *exempted.*" *In re Avis,* 1996 WL 910911, *8 (Bankr.E.D.Va.1996). As Judge Mitchell observed:

> This leads to the puzzling question of just how such an interest should be listed on the debtor's schedules. Since the instructions to schedule B require a listing of all "property of the *debtor*" (without regard to whether such property would be property of the estate), it should be listed there. The official forms, however, do not provide a specific schedule or list for property of the debtor which the debtor contends is not property of the estate, such as spendthrift trusts or ERISA-qualified retirement plans. Perhaps because of this, debtors commonly claim the § 541(c)(2) exclusion on schedule C, the schedule of property claimed exempt, since there is no other obvious place to claim it.

*Id.* at *8 n. 9.

This court is in agreement with Judge Mitchell's observation.

Accordingly, debtor's remainder interest in the trust is excluded from property of the bankruptcy estate. Alternatively, debtor's remainder interest is included in property of the bankruptcy estate but is an asset that can be exempted.

A separate order consistent with this opinion will be entered.